**FRENCH v. GIBBS CORPORATION.**

**HENRY v. GIBBS CORPORATION.**

Nos. 231, 232, Dockets 21968, 21969.

United States Court of Appeals. Second Circuit.

Argued May 1, 1951.

Decided June 7, 1951.

788

Gallop, Climenko & Gould, New York City, George Trosk, Jesse Climenko, New York City, of counsel, Martin I. Shlefstein, Brooklyn, N. Y., argued for plaintiffs.

Kirlin, Campbell & Keating, New York City, Louis J. Gusmano, New York City, Edwin S. Murphy, New York City, of counsel for defendant.

Before L. HAND, CHASE and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

These appeals come up from orders vacating the service of the summonses and complaints, and from judgments dismissing the complaints for lack of jurisdiction over the person of the defendant, in two actions, each of which was the same except for a different plaintiff. The complaints alleged that the defendant, a Florida corporation, had made a contract with the plaintiffs by which five per cent of all "gross sales originated or substantially assisted by defendant's New York office would be credited to said office for its profits," and that these would be divided between the two plaintiffs, who were to manage the office. The summonses and complaints were served upon the chairman of the defendant's board of directors on August 9th, 1950, after the defendant's activities within the State of New York had on July 6th, 1950, been reduced to so few that, taken by themselves, they would not support a finding that it was "present" within the state after that date. Until that date the corporation's activities in New York had been ample to support such a finding; moreover, the contract in suit had been made, performed and broken in that state. Again, although after July 6th, 1950, the activities had been reduced, as we have said, they did not altogether cease. The defendant still retained under lease an apartment in the Hotel Park Lane, Park Avenue, for the convenience of its representatives "while in New York on solicitation of business or financing or for their own pleasure." This was occasionally used among other purposes "for certain interviews with banks as to financing arrangements for defendant's business outside the State of New York"; and the defendant continued to keep an account in a New York bank. The defendant argues that, since its activities had become so few that it was not "present" when the summonses were served, the court got no jurisdiction. The plaintiffs argue that, since it had been subject to suit in personam until a month before, since the claim arose out of its local activities, and since it had not wholly withdrawn from the state, it remained liable to

service. That was the issue and the judge decided it in the defendant's favor.

As everyone knows, the first notion was that a corporation, being a fictitious jural person, could not be recognized as existing at all outside the borders of the state which chartered it.[1] The next step was that, when a corporation sent agents to execute contracts in a state, whose laws made it conditional upon his representing that he should "be deemed its agent to receive service of process in suits founded on such contracts," his appointment "clothed him with power to receive notice * * * as effectually as if he were designated in the charter as the officer on whom process was to be served."[2] In Baltimore & O. R. Co. v. Harris, 12 Wall. 65, 83, 20 L.Ed. 354, without discussion the Court extended this "presumption" of consent to actions upon liabilities arising in other states; but in Old Wayne Mutual Life Association v. McDonough, 204 U.S. 8, 22, 23, 27 S.Ct. 236, 51 L.Ed. 345, it reverted to the original theory that the consent was limited to liabilities arising out of transactions in which the corporation had authorized the agent to act for it. On the other hand in Green v. Chicago, Burlington & Quincy Railway, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, although the court vacated the process, the entire discussion presupposed that, if the corporate local activities had been greater, the plaintiff might have sued in Pennsylvania for injuries suffered in Colorado; yet in Simon v. Southern Railway, 236 U.S. 115, 130, 35 S.Ct. 255, 59 L.Ed. 492, it again fell back upon the limitation laid down in Old Wayne Mutual Life Association v. McDonough, supra, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345. This being the confused state of the authorities, the Court in Philadelphia & Reading Railway v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, laid it down that the question was always whether the corporation was "doing business within the state in such manner and such extent as to warrant the inference that it is present there", although the opinion reserved the question whether even then it was subject to process in actions upon liabilities arising outside the state. This obviously helped no more to a solution than frankly to beg the question as was done in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587; and it is not strange that the lower courts were more or less baffled. However, in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, at page 158, 90 L.Ed. 95, Chief Justice Stone said of a corporation that, "unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it." Such an approach was *toto coelo* different from that of Bank of Augusta v. Earle, supra, 13 Pet. 519, 10 L.Ed. 274; it regarded the corporation, not as a fabricated jural person, but as a confederative venture to which, like all concerted activities, one can ascribe location only in places where its purposes are either planned or executed, although it is immanent in all of these.[3] It does not indeed follow that a corporation should be subject to process wherever it is "present" in that sense; but continuous activities, be they as little as one will, satisfy the necessity of that physical "presence" on which jurisdiction depends in a jurisprudence, territorially limited. Jurisdiction *in personam* in such a jurisprudence presupposes the power of the court to lay its hand upon the defendant, since otherwise it cannot compel his obedience; and it is not a solecism, but an act of grace, if it substitutes notice for a *capias*. For that reason it is also permissible to substitute for a *capias* notice served upon anyone who is conducting the local activities of a corporation outside the state which chartered it; and the only remaining question is whether to force it to trial in the forum of those activities is

**1.** Bank of Augusta v. Earle, 13 Pet. 519, 10 L.Ed. 274.

**2.** Lafayette Insurance Co. v. French, 18 How. 404, 407, 408, 15 L.Ed. 451.

**3.** Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139; Kilpatrick v. Texas & Pacific Railway Company, 2 Cir., 166 F.2d 788; Latimer v. S/A Industries Reunidas F. Mataruzzo, 2 Cir., 175 F.2d 184.

too unfair to be constitutionally defensible. The "demands of due process * * * may be met by such contacts of the corporation with the state of the forum as make it reasonable * * * to require the corporation to defend the particular suit." [4]

■ We do not read the majority opinion in Travelers Health Association v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, as holding that valid process *in personam* can be acquired over a foreign corporation, none of whose activities take place within the state. In the first place, all that the Court decided was that, when a Nebraska corporation conducted a "mail-order" insurance business in Virginia, the Corporation Commission of that state had power to direct it to "cease and desist" unless it consented to be sued *in personam* in Virginia. The appeal did not involve an action *in personam* against the Nebraska corporation, based upon any "presumed" consent; and there can be no doubt of a state's power to impose local sanctions upon any activities within its borders: *e.g.*, by forbidding its citizens to engage in them, and by denying legal sanction to any local transactions which take place in defiance of its will. In the second place, the Nebraska corporation was "present" in Virginia anyway. True, it did not conduct its local activities by agents of its own choosing, but it had to act through some intermediary and it chose the mails. The correspondence by which it reached its customers in Virginia and closed contracts with them, was as much a way of invading the state as though it had done so by agents of its own choosing;[5] and it is always possible for a state to create legal liabilities against an absent person, whose conduct produces consequences within its borders which it forbids.[6]

■ As we have said, courts have indeed often spoken as though a corporation's "presence" depended upon the existence of those attending circumstances, which make it just that the trial should be in the forum selected by the plaintiff; but it is not permissible, we believe, to regard this as only a shorthand for saying both that the corporation was engaged in *some* local activities, and that these were important enough to make the local trial fair. Obviously among the facts that will be relevant upon that issue is whether the liability arose out of events occurring within the state of the forum. Still more relevant and important will be whether the service was made within a short time after the corporation had discontinued its principal activities. Certainly when these two circumstances conspire, it is proper to demand of the defendant some showing why during the interval the situation had so changed that, although it was fair to force it to a trial before it reduced its activities, it had become unfair when the writ was served. In the case at bar the defendant showed nothing of the sort; it rests upon the thesis that, as soon as its activities ceased to be independently enough to subject it to service, it ceased to be so subject, until it should once more assume enough activities to make it justiciable. Our answer, as we have said, is that, given any continued local activities the strict requirement of "presence" is satisfied; and that the rest is a matter of more or less. It is not necessary for us to decide whether we agree with the decision in Mid-Continent Petroleum Corporation v. Universal Oil Products Company, 198 Misc. 1073, 102 N.Y.S.2d 74, affirmed 278 App.Div. 564, 102 N.Y.S.2d 451. The corporation had there discontinued activities of every kind; and to hold it liable because of its past activities was certainly incompatible with ordinary notions of jurisdiction *in personam*. It would indeed be hazardous to assume that in the end courts will not bridge the gap by recourse to the well-worn expedient of a presumption; but we leave that issue open.

Orders and judgments reversed; causes remanded.

---

4. International Shoe Co. v. Washington, *supra*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95.

5. Restatement of Conflict of Laws, § 66.

6. Restatement of Conflict of Laws, §§ 65, 377.