**ACKERLEY v. COMMERCIAL CREDIT CO. et al.**

**PENNSYLVANIA RAILROAD CO. v. UNITED STATES et al. (two cases).**

**HEALING & SON, Inc. v. KILGORE MFG. CO. et al.**

Civ. Nos. 477–52, 385–52, 386–52, 387–52.

United States District Court
D. New Jersey.
March 5, 1953.

As Amended March 13 and April 2, 1953.

See also, D.C., 111 F.Supp. 80.

John W. Taylor, Newark, N. J., William F. Little, Jr., Newark, N. J., on the brief, for Seaboard Coal Dock Co., Inc.

Katzenbach, Gildea & Rudner, Trenton, N. J., for Reading Co.

Markley & Broadhurst, Jersey City, N. J., for Baltimore & O. R. Co.

Cox & Walburg, Newark, N. J., for Isbrandtsen Company, Inc.

Green & Yanoff, Newark, N. J., for Commercial Credit Co.

Joseph W. Tummulty, Jersey City, N. J. (O'Connor & Randolph, New York City, of counsel), for Mary E. Ackerley.

Carpenter, Gilmour & Dwyer, Jersey City, N. J., for Pennsylvania R. Co.

Milton, McNulty & Augelli, Jersey City, N. J., for Healing & Son, Inc., et al.

FORMAN, Chief Judge.

The following opinion deals with motions made in cases arising out of an explosion of materials of war at South Amboy, New Jersey, on May 19, 1950:

– I –

In Civil Action No. 477–52, Mary E. Ackerley, an administratrix, brought suit for the wrongful death of her New Jersey decedent against the government of Pakistan, against a number of corporations existing under the laws of states other than New Jersey and against the Central Railroad of New Jersey, a New Jersey corporation. Motions to dismiss for lack of jurisdiction in that there was no diversity of citizenship between the plaintiff and all the defendants, particularly between plaintiff and the said Central Railroad of New Jersey, were made by Seaboard Coal Dock Company, Incorporated, Reading Company, Isbrandtsen Company, Inc., and the Baltimore and Ohio Railroad Company. Plaintiff then moved for an order permitting her to amend the summons by dropping as a party defendant the Central Railroad Company of New Jersey and to serve and to file an amended complaint omitting from it any allegation with respect to that defendant.

It is not disputed that plaintiff in this action, a resident of New Jersey, has joined as a defendant a resident of the same state, namely, Central Railroad of New Jersey, and that if the said defendant, Central Railroad of New Jersey, remains in the case, this court will lack jurisdiction. Admitting this, plaintiff seeks to amend her complaint by dropping that defendant and by deleting all allegations as to it.

There is ample authority that such an amendment is permissible, if the party dismissed is not an indispensable party. The case of Dollar S.S. Lines v. Merz, 9 Cir., 1934, 68 F.2d 594, concerns an appeal from a judgment in a diversity of citizenship case wherein two of the defendants who were proper parties were from the plaintiff's state.

In reversing a judgment for the plaintiff, the circuit court ordered a new trial, stating:

"Where, because of the joinder of proper, though not indispensable, parties as defendants, there is not merely on the record but in fact no such diversity of citizenship as to give jurisdiction, the District Court may permit a dismissal of such parties and thereby establish jurisdiction with retroactive effect. * * *" 68 F.2d at page 595.

There is other authority to the same effect as to the power of a district court to allow such an amendment dismissing a party not indispensable, States v. John F. Daly, Inc., D.C.E.D.Pa.1951, 96 F.Supp. 479; see 3 Moore's Federal Practice, pp. 836 et seq.; 4 Federal Rules Service Commentary § 15a241.

An indispensable party is defined as one having such an interest in the controversy that a final decree cannot be made without either affecting his interest or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience, see Chidester v. City of Newark, 3 Cir., 1947, 162 F.2d 598, 600. Tortfeasors, such as Central Railroad of New Jersey is alleged to be, are not indispensable parties to an action against one of their number, Picking v. Pennsylvania Railroad Co., 3 Cir., 1945, 152 F.2d 753, certiorari denied 1947, 332 U.S. 776, 68 S.Ct. 38, 92 L.Ed. 361; Sauer v. Newhouse, D.C.N.J.1938, 24 F.Supp. 911; see 3 Moore's Federal Practice, p. 2153. Thus, unless the fact that the statute of limitations has run is a bar, the plaintiff may be permitted to amend in the manner she has requested.

This action is based on the New Jersey Wrongful Death Act, N.J.R.S. 2A:31–1 et seq., N.J.S.A., which provides that,

"Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." N.J.R.S. 2A:31–3, N.J.S.A.

The time within which the plaintiff could commence this action has now run. Fed.

Rules Civ.Proc. rule 15(c), 28 U.S.C.A., however, provides that,

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

This rule has been applied to amendments to complaints which were designed to give the court jurisdiction, Christensson v. Hogdal, D.C.Cir., 1952, 199 F.2d 402; Zellem v. Herring, D.C.W.D.Pa.1951, 97 F.Supp. 103. Plaintiff's claim after making her proposed amendment would arise out of exactly the same occurrence as before, but the moving defendants contend that the plaintiff cannot take advantage of Rule 15(c) because of the special nature of the statute of limitations contained in the New Jersey Wrongful Death Act.

In support of this contention these defendants cite two cases which arose under the Tucker Act, 28 U.S.C. § 1346; the cases are Hammond-Knowlton v. United States, 2 Cir., 1941, 121 F.2d 192, certiorari denied 1941, 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555 and McMichael v. United States, D.C.N.D.Ala.1945, 63 F.Supp. 598. Under the Tucker Act the United States has waived its sovereign immunity from suit in certain cases provided the suit is not for amounts in excess of $10,000. In each of these cases the plaintiff sued for a sum in excess of the statutory limit and after the statute of limitations had run sought to amend his complaint to assert the jurisdictional amount. In each case it was held that the amendment would not relate back under Rule 15(c), but each pointed out that the situation involved was the special one concerning the consent of the sovereign to be sued. Judge Frank wrote in the Hammond-Knowlton case,

> "But in the supposed case, and here, the difficulty is, it would seem, more grave than a failure, in the ordinary case, to allege 'jurisdictional' facts; it is something apparently regarded by the Supreme Court as more serious, i. e., as a failure to comply with a condition of the sovereign's waiving its immunity

from suit. * * *" 121 F.2d at page 202.

That these cases are to be confined to situations where a question of sovereign immunity is involved is clearly indicated by further comments from Judge Frank, who noted,

> "If the suit were between private persons, it might well be regarded as having originally been brought against a defendant, sued in the wrong capacity, so as not to preclude an amendment, rectifying that error, filed after the statute had run. [Cases cited.] On that analogy, were this a case of first impression, we would incline to hold that appellee's amendment effectually related back." 121 F.2d at pages 193, 194.

He stated further,

> "True, it has been held that, where a plaintiff, in a suit in the federal courts, fails to allege diversity of citizenship—which is 'jurisdictional'—he may amend, after the statute has run, so as to supply the missing allegation if it correctly states the actual facts. * * *" 121 F.2d at page 202.

The moving defendants are not helped, therefore, by these cases.

██ There is no question but that this court must apply the New Jersey statute of limitations requiring that the action be brought within two years of the death of the decedent. Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. The Supreme Court has held that in a diversity of citizenship case the statute of limitations of the state whose law governs the substantive questions at issue is not tolled until the plaintiff has taken the steps required by state law. Thus, although a plaintiff in such a suit files a complaint before the running of the state statute of limitations, he is barred by that statute if he does not also fulfill the state requirement that summons be served in order to toll the statute. Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; see also Meyers v. Slotkin, D.C.E.D.N.Y.1952, 13 F.R.D. 191.

The holding in the Ragan case would not bar the plaintiff in this controversy, for an action is commenced when the complaint is filed, both under Federal Rule 3 and under New Jersey Rule 3:3–1. But certain language in the Ragan case suggests that perhaps New Jersey law should govern the question whether an amendment to the complaint will relate back to the date of the original filing or whether an amendment will be deemed to state a new cause of action and therefore be barred if the statute of limitations has run. In the Ragan case, Justice Douglas wrote, 337 U.S. at pages 533, 534, 69 S.Ct. at page 1235.

> "We can draw no distinction in this case because local law brought the cause of action to an end after, rather than before, suit was started in the federal court. In both cases local law created the right which the federal court was asked to enforce. In both cases local law undertook to determine the life of the cause of action. We cannot give it longer life in the federal court than it would have have had in the state court without adding something to the cause of action. We may not do that consistently with Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]."

Several years prior to its decision in the Ragan case, the Supreme Court denied certiorari in a case which held that the question of whether an amendment to a complaint will relate back is determined by the Federal Rules of Civil Procedure, Isaacks v. Jeffers, 10 Cir., 1944, 144 F.2d 26, certiorari denied, 1944, 323 U.S. 781, 65 S.Ct. 270, 89 L.Ed. 624. The situation was similar to the one involved here. An executor brought suit in the District Court of the United States, District of New Mexico, against the decedent's partner to compel an accounting. A New Mexico statute barred such an action if it was not brought within four years after the right accrued. A second amended complaint was filed after the four years had run, and the defendant raised the statute as a bar. The court stated:

> "The further contention is made that in any event the second amended complaint stated a new cause of action against the defendant J. H. Jeffers and is clearly barred by the statute of limitations. Rule 15(c) of the Rules of Civil Procedure provides that:
>
> " 'Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.'
>
> "All three pleadings centered around the same transaction—the handling and management of the RUN and PX brand of cattle. Each complaint sought an accounting from this defendant. The only difference in the three complaints was that in the first two, plaintiff also sought an accounting from others than this defendant. The claim in each complaint was asserted with respect to the same cattle and in a large part arose out of the conduct, transactions and occurrences set forth in the original complaint. We are of the opinion that the second amended complaint related back to the filing of the original complaint." 144 F.2d at pages 28, 29.

Whether or not the rule of the Isaacks case correctly states the present law, the result must be the same here, for not only is New Jersey law the same as the federal law in respect to commencement of an action, it is also the same in respect to relation back of amendments to a complaint to the date of filing the original complaint. The same language is employed in New Jersey Rule 3:15–3 as in Federal Rule 15 (c). Construction of the rule by New Jersey's Supreme Court does not appear to differ from its construction by federal courts, City of Bayonne v. Murphy & Perrett Co., 1951, 7 N.J. 298, 81 A.2d 485; Russo v. Wright Aeronautical Corp., 1949, 1 N.J. 417, 64 A.2d 71. As a state court is not faced with the problem of the diversity of citizenship requirement, if she were in a state court, the plaintiff would not find it necessary to request that the Central Railroad be dropped, but there seems no reason to believe that a New Jersey court

would not permit an analogous amendment to relate back.

By the terms of Rule 15(a) a court should grant leave to amend freely when justice so requires. It has been held that a court should consider the request for leave to amend under subsection "a" of the rule uninfluenced by whether, under Rule 15(c), the amendment would or would not relate back, and that once the amendment has been allowed, if the defendant pleaded limitation, the court would then act upon the plea in light of the provision of 15(c), Copeland Motor Co. v. General Motors Corp., 5 Cir., 1952, 199 F.2d 566; Naamloze Vennootschapp Suikerfabriek "Wono-Aseh" v. Chase National Bank of City of New York, D.C.S.D.N.Y.1952, 12 F.R.D. 261. In the instant case, however, plaintiff would be entitled to amend without claiming the benefit of the rule advanced in these cases, for, either under the Federal Rules of Civil Procedure and the cases interpreting these Rules, or under New Jersey rules and cases her amendment will relate back to the date of the filing of her original complaint.

■ Consequently plaintiff's motion for leave to amend the summons by dropping as a party defendant the Central Railroad Company of New Jersey and to serve and file an amended complaint omitting any allegation with respect to it will be granted. With this disposition of the Central Railroad of New Jersey as a party defendants' motions to dismiss the action on the ground that the court lacks jurisdiction must fall and they will be denied.

## –II–

In each of the following suits, Isbrandtsen Company, Inc. is named as one of the defendants or as a respondent:

Civil Action No. 477–52, Mary E. Ackerley, as Administratrix, etc. v. Commercial Credit Company;

Civil Action No. 385–52, Pennsylvania Railroad Company v. United States of America;

Civil Action No. 386–52, Pennsylvania Railroad Company v. United States of America;

Civil Action No. 387–52, Healing & Son, Inc. v. Kilgore Manufacturing Co. (In Admiralty).

In the first suit plaintiff sues for damages. In the second the plaintiff seeks, among other things, a judgment declaring the rights and other legal relationships of the parties to the suit as well as all persons, firms, and corporations who suffered damages as a result of the explosion at South Amboy as between themselves and to each other. The third suit is an admiralty action in which the libelants as owner and charterer, respectively, of certain self propelled lighters sue fourteen respondents.

In these cases as well as in the first case mentioned in this opinion, Civil Action No. 477–52, Mary E. Ackerley, as Administratrix, etc. v. Commercial Credit Company, Isbrandtsen Company, Inc. has moved to set aside the service of the process and complaints and libel alleged to have been served on it and for orders dismissing the complaints and libel and entering judgments in its favor on the ground that at the time of service of process Isbrandtsen Company, Inc. was not doing business in New Jersey.

The facts concerning the activities of Isbrandtsen Company, Inc. in New Jersey have been disclosed by affidavits. It is a New York corporation whose office and principal place of business is in New York City. Prior to May, 1950, it berthed its vessels for loading and unloading cargoes in New Jersey, but it claims that it discontinued doing business in New Jersey several weeks prior to the catastrophe which is the subject matter of these cases.

Mr. Strangfeld is an employee of Isbrandtsen who, from time to time after May, 1950, visited prospective consignors of cargo in New Jersey to make known availability of Isbrandtsen's vessels and to ascertain the status of such cargo. He did not solicit shipments, a function which is largely performed by independent brokers, nor did he book cargoes, which was done exclusively at the New York office of the company.

Within two years after the South Amboy accident seventeen vessels either owned or

chartered by Isbrandtsen made · eighteen calls at New Jersey ports. Of three commercial visits, two were made by time-chartered vessels which discharged cargo at Sayreville for the National Lead Co., and one was made by a ship which anchored at the Navy Explosives Anchorage off Leonardo, New Jersey. The rest of the vessels were engaged in transporting military cargo for the Army under Army direction and the unloadings of which were supervised by the Army. There were eight loadings at Caven's Point, four at Claremont Terminal and three at Port Newark. Caven's Point is owned by the United States, which has accepted exclusive jurisdiction over it from the State of New Jersey. Claremont Terminal is owned by the Lehigh Valley Railroad, which, at the time the suits were brought, subleased to Dade Brothers, Inc., who were under contract with the United States Army Engineers to operate the terminal. Prior to Dade Brothers' operation, Atlas Constructors performed that task. Port Newark is leased to the Port of New York Authority which has in turn subleased the facilities used by Isbrandtsen to the United States.

Service of process was made on Mr. Roy F. Pierce in New Jersey. He was treasurer of Isbrandtsen, and his home was in New Jersey.

All parties agree that this court has jurisdiction over Isbrandtsen Company, Inc. only if it is found to be doing business in the State of New Jersey. Isbrandtsen bases its motion for quashing of service of summons and for dismissal as to it on the ground that the activities enumerated above do not constitute doing business since May 1, 1950.

The minimum amount of activity which a foreign corporation may have within a state so as to be amenable to suit there should the state choose to subject it to process is a matter of Constitutional law, governed, in the last resort, by the Supreme Court. That Court has held that whether due process requirements of the Fourteenth Amendment are satisfied depends upon the facts of each case and that in each case where the question of the permissibility of a suit against a foreign corporation arises, the court must decide whether the quality and nature of the activity of the corporation within the state is so considerable that a suit against it there does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The broadened concept of doing business applied in that case does not automatically broaden state definitions of doing business. It merely permits such enlargement, see Bomze v. Nardis Sportswear, 2 Cir., 1948, 165 F.2d 33, 36.

Isbrandtsen maintains that, aside from the issue of due process, the law defining doing business which should be applied by this court in diversity of citizenship cases such as this is the law of New Jersey. The cases which Isbrandtsen cites do not support this proposition, as they concern either a state regulatory law requiring a corporation doing business in the state to file certain papers and to appoint an agent for service of process, Kansas City Structural Steel Co. v. State of Arkansas, 1925, 269 U.S. 148, 46 S.Ct. 59, 269 U.S. 148, 70 L.Ed. 204, or procedural questions where, of course, state law would govern, such as the adequacy of state process prior to removal of a case to the federal court, Rosenthal v. Frankfort Distillers Corporation, 5 Cir., 1951, 193 F.2d 137; Bomze v. Nardis Sportswear, Inc., supra, or adequacy of service made pursuant to state law as permitted by Federal Rule 4(d) (7), Steinway v. Majestic Amusement Co., 10 Cir., 1949, 179 F.2d 681, 18 A.L.R.2d 179, certiorari denied 1950, 339 U.S. 947, 70 S.Ct. 802, 94 L. Ed. 1362; Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193. There is a case which stated that in diversity cases the definition of doing business for the purpose of being subject to suit is a substantive question within the meaning of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, and to be decided therefore by application of state law, but that case was, on its facts, a removal case, Perkins v. Louisville & N. R. R. Co., D.C. S.D.Cal.1951, 94 F.Supp. 946; see also Cole v. Stonhard Co., D.C.N.D.N.Y.1952, 12 F. R.D. 508.

Other courts, however, have applied federal law in determining if a corporation is doing business within a given state in diversity cases, French v. Gibbs Corporation, 2 Cir., 1951, 189 F.2d 787; Hedrick v. Canadian Pacific Ry. Co., D.C.S.D.Ohio 1939, 28 F.Supp. 257; see also 2 Moore's Federal Practice pp. 969, 970.

It must be determined if the activities of Isbrandtsen in New Jersey are sufficient to render it fair and reasonable to sue the corporation in this state. As has been related, Isbrandtsen vessels made eighteen calls at New Jersey ports within two years after the explosion. A federal court has held that a corporation which did nothing in a state but unload and load vessels and make the necessary arrangements therefor was doing business within that state and was subject to suit there. In one case the defendant docked five ships in 1944, eight in 1945 and seven in 1946 prior to May 23, Holland v. Parry Nav. Co., D.C.E.D.Pa. 1947, 7 F.R.D. 471 and in another thirty-five of the defendant's ships called at the Port of Philadelphia during a two year period, Jenkins v. Lykes Bros. S. S. Co., D.C.E.D.Pa.1943, 48 F.Supp. 848.

The fact that a company's vessels are in the service of the United States would not appear to alter this conclusion. In the case of Van Horn v. Waterman S. S. Corporation, D.C.E.D.Pa.1944, 71 F.Supp. 347, at page 348, the court stated:

"The requisition did not take the form of a seizure of the ships by the government. The defendant's ships were chartered (a number by time charter) in much the same way that they would have been in the case of a private charterer. Of course, had the defendant refused to enter into the relationship and operate the vessels, they could, and no doubt would, have been seized. If that had occurred the defendant clearly would not have had anything to do with the ships calling at Philadelphia and would not have been doing business there. But the vessels were not seized and the case must be judged upon what the situation actually was, and I think that the defendant was still in the business of transportation although under contract with the government, and that part of that business was conducted at the port of Philadelphia."

In the suits at hand I am constrained to the view that without more, the loading and unloading activity of Isbrandtsen in New Jersey is sufficient to constitute doing business in this state for the purpose of subjecting the company to suit here. Isbrandtsen, however, insists that this conclusion cannot be reached because eight of the loadings were at Caven's Point which was owned by the United States and over which the United States has taken exclusive jurisdiction from the State of New Jersey pursuant to 40 U.S.C.A., § 255[1] and N.J. R.S. 52:30–1,[2] 52:30–2,[3] N.J.S.A., and be-

1. "* * * Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. * * *" 40 U.S.C.A. § 255.

2. "The consent of this state is hereby given, pursuant to the provisions of article one, section eight, paragraph seventeen, of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land within this state, for the erection of dockyards, custom houses, courthouses, post offices or other needful buildings." N.J.R.S. 52:30–1, N.J.S.A.

3. "Exclusive jurisdiction in and over any land so acquired by the United States is

cause the activity was conducted on such federally controlled property it cannot be considered as being done in New Jersey.

Article 1, Section 8 of the United States Constitution provides:

"The Congress shall have Power * * *

\* \* \* \* \* \*

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * *."

The United States can own lands within a state and use them for government purposes without withdrawing them from the jurisdiction of the state either by virtue of owning them at the time the state was admitted to the union and failing to except the lands from the state's jurisdiction at the time of its admission, or by purchasing or condemning the lands after a state's admission without the consent of the state. A state may cede the jurisdiction over lands, and the cession may be absolute or qualified, provided the qualifications are not inconsistent with the purposes for which the lands and buildings thereon are maintained by the United States, Fort Leavenworth R. Co. v. Lowe, 1885, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; see United States v. Unzeuta, 1930, 281 U.S. 138, 142, 50 S.Ct. 284, 74 L.Ed. 761. Land acquired by the United States for fortifications with the consent of the state's Legislature is subject to the jurisdiction of the United States exclusive of all state authority, Surplus Trading Co. v. Cook, 1930, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; cf. Howard v. Commissioners of Sinking Fund of City of Louisville, 344 U.S. 624, 73 S.Ct. 465.

The cases cited by the defendants hold that where a state has surrendered its jurisdiction over a military reservation or where it never had such jurisdiction, state regulation, Pacific Coast Dairy, Inc. v. Dept. of Agriculture of California, 1943, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761; Yellow Cab Transit Co. v. Johnson, D.C.W.D.Okl.1942, 48 F.Supp. 594, affirmed, 10 Cir., 1943, 137 F.2d 274, affirmed, 1944, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814, and state taxation, Standard Oil Co. v. People of State of California, 1934, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775 of activities within such reservation is illegal, though where the United States holds a leasehold only of lands within a state, state regulation applies to non-governmental activities thereon as there is no surrender of state jurisdiction, Penn Dairies, Inc. v. Milk Control Commission, 1943, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748.

In the present cases, however, there is no question of regulation by the state. New Jersey, when it ceded jurisdiction of Caven's Point to the United States, reserved the right, as it was entitled to do, of serving process issued out of any state court in any civil or criminal proceeding. The case of Knott Corporation v. Furman, 4 Cir., 1947, 163 F.2d 199, certiorari denied, 1947, 332 U.S. 809, 68 S.Ct. 111, 92 L.Ed. 387, concerns a similar situation. Plaintiff was injured in a fire in a hotel on the Fort Monroe Military Reservation in Virginia. Defendant, a Delaware corporation, operated the hotel. Suit was instituted in the United States District Court in Virginia. The defendant challenged the jurisdiction of the court on the ground that it was not doing business in Virginia as re-

hereby ceded to the United States for all purposes except the service of process issued out of any of the courts of this state in any civil or criminal proceeding.

"Such jurisdiction shall not vest until the United States shall have actually acquired ownership of said lands, and shall continue only so long as the United States shall retain ownership of said lands." N.J.R.S. 52:30-2, N.J.S.A.

quired by the federal venue statute, 28 U.S. C. § 1391, for its activities were confined to the military reservation. The land contained in the reservation was ceded by Virginia to the United States by an act which stipulated that the cession should not be construed so as to prevent officers of the state from executing process or discharging any legal function within the territory ceded. Holding that the defendant's activities on the military reservation constituted doing business in Virginia, the court stated:

"We come, then, to the question as to whether the application of the statute is different because the business done was on the Fort Monroe Military Reservation. We do not think so. It would be an anomalous result, indeed, if a foreign corporation doing business in Virginia could not be sued in a federal court with respect to business done merely because it was done on federal territory; and we find nothing in the law which would lead to any such result. * * *

\* \* \* \* \* \*

"Corporations doing business on the reservation come in contact with the citizens of Virginia and do business with them in the same way as foreign corporations doing business elsewhere within the state, and there is the same reason for making them amenable to process in the local courts. Since the state has retained the right to serve process on foreign corporations as well as on others within the reservation and has the power to say what shall constitute such service, it follows that any act which may be legally taken as an acceptance of service elsewhere within the state may be so taken within the reservation. This necessarily means that the doing of business by a foreign corporation within the reservation has the same effect, so far as submitting itself to the local jurisdiction for the service of process is concerned, as doing business elsewhere within the state." 163 F.2d at page 206.

The fact that certain of Isbrandtsen's activities were conducted at Caven's Point, a federal enclave, does not require this court to ignore those activities in deciding if it was doing business in New Jersey. As for the other ports operated by the United States at which Isbrandtsen's vessels called, one, Claremont Terminal, was owned by a private concern and was leased to a concern which operated it for the United States Army Engineers, and the other, part of Port Newark, was subleased to the United States. In neither of these cases has the State of New Jersey lost its jurisdiction save as to matters which would conflict with the federal government's purposes in using the lands, Penn Dairies v. Milk Control Commission, supra. It cannot be said that considering activities of corporations on the lands for the purpose of deciding if the corporations are doing business in New Jersey and are therefore subject to suit there interferes with the purposes of the United States.

In addition to the fact that in years prior to the suit Isbrandtsen vessels made frequent calls at New Jersey ports, the corporation admittedly did substantial business in New Jersey until May 1, 1950, several weeks before the explosion. After that time one of its employees, Mr. Strangfeld, visited prospective consignors of cargo in New Jersey from time to time. The case of French v. Gibbs, supra, concerned a suit brought in the United States District Court in New York against a Florida corporation which had been doing business in New York at the time of the events complained of but which, prior to service of process, had reduced its New York activities to such an extent that it could not be found to be "present" in that state. Holding that these facts justified suit against the corporation in New York, Judge Learned Hand wrote:

"As we have said, courts have indeed often spoken as though a corporation's 'presence' depended upon the existence of those attending circumstances, which make it just that the trial should be in the forum selected by the plaintiff; but it is not permissible, we believe, to regard this as only a shorthand for saying both that the corporation was engaged in *some* local activities,

and that these were important enough to make the local trial fair. Obviously among the facts that will be relevant upon that issue is whether the liability arose out of events occurring within the state of the forum. Still more relevant and important will be whether the service was made within a short time after the corporation had discontinued its principal activities. Certainly when these two circumstances conspire, it is proper to demand of the defendant some showing why during the interval the situation had so changed that, although it was fair to force it to a trial before it reduced its activities, it had become unfair when the writ was served. In the case at bar the defendant showed nothing of the sort; it rests upon the thesis that, as soon as its activities ceased to be independently enough to subject it to service, it ceased to be so subject, until it should once more assume enough activities to make it justiciable. Our answer, as we have said, is that, given any continued local activities the strict requirement of 'presence' is satisfied; and that the rest is a matter of more or less. * * *" 189 F.2d at page 790.

 I conclude that in view of the periodic calls of Isbrandtsen's vessels at New Jersey ports, both at the federal enclave of Caven's Point and at ports under New Jersey's jurisdiction, in view of Isbrandtsen's other substantial activities abandoned only immediately before the explosion, and in view of its current practice of sending its agent to New Jersey to confer with potential shippers, Isbrandsten Company, Inc. was doing sufficient business in New Jersey at the time it was served in these suits to make it reasonable and fair for it to defend in this court.

Were it held that in order to effectuate the policy expressed in Erie R. Co. v. Tompkins, supra, that in diversity of citizenship cases the outcome of the litigation in the federal court should be substantially the same as it would be if tried in a state court and that "doing business" should be defined by state law, or were the plaintiffs

seeking to sustain service on Isbrandtsen under Federal Rule 4(d) (7) permitting service in the manner prescribed by the law of the state in·which service is made it would be necessary to determine if the company was doing business as defined by New Jersey law. There are no New Jersey cases directly in point, but the general rules on the subject of doing business set forth in recent cases contain no indication that New Jersey courts would come to a conclusion different from that reached here. Westerdale v. Kaiser-Frazer Corp., 1951, 6 N.J. 571, 80 A.2d 91; Jacobs v. Horan Engraving Co., Inc., S.Ct.1948, 137 N.J.L. 520, 61 A.2d 22; Yedwab v. M. A. Richards Corp., S.Ct.1948, 137 N.J.L. 448, 60 A.2d 310. See also Carroll v. New York, New Haven v. Hartford R. R. Co., S.Ct.1900, 65 N.J.L. 124, 46 A. 708.

Isbrandtsen Company, Inc.'s motions to set aside the service of process, complaints and libel and for orders dismissing the complaints and libel in the suits mentioned at the head of this section of this opinion and for an order entering judgments in its favor are denied.

– III –

Commercial Credit Company is a respondent in the said admiralty suit, Civil Action No. 387–52, Healing & Son, Inc., et al. v. Kilgore Manufacturing Co., et al., and a defendant in said Civil Action No. 477–52, Mary E. Ackerley, as Administratrix, etc., v. Commercial Credit Co., et al. It has filed a petition for an order setting aside and quashing service of the citation and dismissing the libel in the admiralty suit and has moved for an order to quash the return of service of the summons against it and to dismiss the action in the other suit. The grounds for the granting of the petition and the motion are that it was not subject to service of process in the District of New Jersey; that at no time has it engaged in or qualified itself to do business in New Jersey; that it is incorporated under the laws of the State of Delaware and is an inhabitant of that state and was not properly served in New Jersey.

Commercial Credit Company is a Delaware corporation whose principal place of

business is in Wilmington. Its books and records are kept in Delaware or Maryland, and its directors' meetings are held in those two states. It has no place of business in New Jersey and none of its officers or directors live there. It has no telephone or employees in that state. It does, however, borrow money from sources in New Jersey. As of August 31, 1952, 12% of its outstanding debts were on long-term loans from a New Jersey corporation, and 2.37% were on a short-term basis from New Jersey sources. Commercial Credit Corporation, a New Jersey corporation, is substantially wholly owned by Commercial Credit Company. Commercial Credit Corporation's operations are separate from those of its parent. It has its own board of directors and staff of officers; it keeps its own set of books and records.

In Civil Action No. 477–52 service on Commercial Credit Company was made by serving Mr. R. S. Johnston, assistant treasurer of Commercial Credit Corporation, who, at no time, was an employee, officer, agent or representative of Commercial Credit Company.

In Civil Action No. 387–52 service on Commercial Credit Company was made by serving Mr. Ed Maciak, an employee of Commercial Credit Corporation, who also was not an employee or representative of Commercial Credit Company.

As in the disposition of the Isbrandtsen motion, the initial issue is whether Commercial Credit Company is doing business in New Jersey so as to be subject to suit in this court. The statement of the law concerning doing business applies equally to these motions.

 The fact that Commercial Credit Company owns a New Jersey subsidiary corporation does not of itself constitute doing business, Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900.

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. * * * It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. * * * In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance." Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, at pages 336, 337, 45 S.Ct. 250, at page 251, 69 L.Ed. 634.

In addition, the plaintiff and libelants in these cases contend that the fact that 14.–37% of Commercial Credit Company's outstanding debts were owed to New Jersey corporations constitutes doing business in New Jersey. Sullivan v. Kilgore Mfg. Co., D.C.E.D.N.Y.1951, 100 F.Supp. 983 is cited to support this proposition. That case arose out of the same transaction as these, and in that case also Commercial Credit Company moved for an order quashing service on it and dismissing the complaint. It owned all the capital stock of Commercial Credit Corporation, a New York corporation. Service was made, however, upon a vice-president of Commercial Credit Company, who visited banks in the east and middle west for the purpose of effecting loans and who spent one-third of each year in New York City for that purpose. His headquarters was at the office of Commercial Credit Corporation of New York, where his name appeared on the bulletin board and on the door. Commercial Credit Company received 35% of its borrowings from New York City banks. On the basis of these facts the court held that Commercial Credit Company was doing sufficient business in New York to be sued there, and that service upon one of its vice-presidents was proper.

It would seem, however, that the situation which prevailed at an earlier period

in the Sullivan case more clearly resembles the situation before this court. At that time plaintiff had served the summons and complaint on a vice president of the New York subsidiary, Commercial Credit Corporation, which bore the same relationship to Commercial Credit Company as does Commercial Credit Corporation of New Jersey in this case. The only activity of Commercial Credit Company in New York of which the court was aware was its ownership of the subsidiary. The court held that on the basis of this fact Commercial Credit Company was not doing business in New York and could not be sued there, Sullivan v. Kilgore Mfg. Co., D.C.E.D.N.Y.1950, 93 F.Supp. 511.

I am constrained to hold that Commercial Credit Company is not doing business in New Jersey as the only activity which the plaintiffs in these cases ascribe to it in this state is the borrowing of nearly 15% of its debts from New Jersey corporations. By the standards set forth in the International Shoe Company case this is not sufficient to make it reasonable to sue Commercial Credit Company here. Unlike the second Sullivan case, there is no evidence that any of its officers spends substantial time here. In addition, even if it were held that Commercial Credit Company were doing business in New Jersey, service has not been effected on any representative of it in the manner prescribed by Federal Rule 4(d)(3) or by New Jersey Rules 3:4–4(a) and 3:4–4(d). The fact that one of these actions involving Commercial Credit Company is in admiralty does not alter this conclusion, see 2 Benedict on Admiralty § 280. Consequently the petition of Commercial Credit Company to quash the service of the citation on it and dismiss the libel in the suit of Healing & Son, Inc., v. Kilgore Mfg. Co., Civil Action No. 387–52, against it will be granted, and its motion that the return of service of summons on it be quashed and that the complaint be dismissed as to it in the suit of Mary E. Ackerley, as Administratrix, etc. v. Commercial Credit Company, Civil Action No. 477–52, will be granted also.

Let an order in conformity with this opinion be submitted.