Carl Zeiss STIFTUNG, doing business under the name and style of Carl Zeiss, and Zeiss Ikon A.G., Plaintiffs,

v.

V.E.B. CARL ZEISS, JENA, Steelmasters, Inc., Ercona Corporation, Exakta Camera Compony, Inc., and Camera Specialty Company, Inc., Defendants.

United States District Court
S. D. New York.
April 8, 1963.

Milbank, Tweed, Hope & Hadley, New York City, for plaintiffs. William Eldred Jackson, Isaac Shapiro, New York City, Walter J. Derenberg, Alexander, Maltitz, Derenberg & Kunin, New York City, of counsel.

Weisman, Allan, Spett & Sheinberg, New York City, for defendant. V.E.B. Carl Zeiss, Jena, Harry I. Rand, Warren F. Schwartz, Leonard Lipschutz, New York City, of counsel.

WEINFELD, District Judge.

The defendant, V.E.B. Carl Zeiss, Jena, an East German concern (hereafter referred to as Zeiss Jena), moves (1) to dismiss the action as against it for lack of jurisdiction upon a claim that it does not and did not transact business within this district, or, in lieu thereof, (2) to quash service of the summons and complaint upon it on the ground that service was not made upon any managing or other agent within the purview of Rule 4(d) (3) of the Federal Rules of Civil Procedure.

The action is brought by two West German corporations against Zeiss Jena, the East German corporation, Steelmasters, Inc., an Illinois corporation, and Ercona Corporation, a New York corporation.[1] Steelmasters and Ercona each has its principal place of business in this district. In general, the plaintiffs seek a declaratory judgment, injunctive relief and monetary damages based upon claims of false description and misrepresentation of goods, infringement of federally registered trademarks and unfair competition, under sections 1051 et seq. of Title 15 United States Code. The central issue in the action appears to be whether the West German or the East German companies own the well known Zeiss trademarks and trade names and which has the exclusive right to the use thereof in the United States.

The summons and complaint here sought to be set aside was served in March, 1962 on Steelmasters and Ercona as managing agent of Zeiss Jena. The essence of the plaintiffs' position is that from 1950 to date Zeiss Jena's activities and contacts within this district, through Steelmasters and Ercona, have been so substantial and continuous that, under the doctrine of International Shoe Co. v. State of Washington,[2] maintenance of this suit does not offend traditional concepts of fair play and substantial justice;

---

1. Two other corporations are named as defendants, but they play no part in the present motion.

2. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

further, that such activities establish that Steelmasters and Ercona were its managing agents and hence service of process upon them on its behalf was proper.

Zeiss Jena, on the other hand, denies that either was its agent. It contends that the sole relationship between it and Steelmasters and Ercona was and is that of buyer and seller of Zeiss Jena scientific equipment and optical goods. The substance of its position is that Steelmasters and Ercona are importers of Zeiss Jena products which they buy in Germany on their own account and thereafter sell in the United States as exclusive distributors of such products. Emphasis is placed upon the fact that Zeiss Jena never owned any stock or had any financial interest in Steelmasters or Ercona; nor did the latter ever own stock or have any financial interest in Zeiss Jena; and at no time have there been interlocking officers or directorships.

■ The conflict must be resolved not upon what the parties claim, nor even upon what their agreements say, but within a framework of actual fact and course of conduct which mirror their true relationship. The ultimate question is whether Zeiss Jena's contacts within this district through Ercona[3] are such that it would not be unfair or unreasonable to require it to respond to this suit in this district.[4] Whether Federal or State standards are to be applied in making this determination has been resolved in favor of Federal law.[5]

■ Extensive depositions were taken on the contested issue of fact. Zeiss Jena, by its overseas sales manager, was examined at Salzburg, Austria before the American Vice Consul and many exhibits were received as part of and attached to the deposition. The plaintiffs also examined officers of Steelmasters and Ercona in this district. The Court has fully reviewed these extensive depositions, the voluminous affidavits and exhibits submitted in support of and in opposition to the motion. While no single or isolated fact is determinative of the issue, I am persuaded that upon the entire record a sufficient showing has been made to support jurisdiction as well as service upon Ercona as a managing agent under Rule 4(d) (3). Upon the facts here presented, neither Jones v. Motorola, Inc.,[6] which concerned a distributorship arrangement, nor Cannon Manufacturing Co. v. Cudahy Packing Co.,[7] which involved a parent company and its wholly owned subsidiary, so strongly pressed by the defendant, is controlling. Analysis of the agreements between Zeiss Jena and the domestic companies and their course of dealings indicates that the relationship goes far beyond that of buyer and seller, or exclusive distributorship, as the defendant contends.

We start with a fact which is not in dispute, that is, from about May, 1950 to the present all products manufactured by Zeiss Jena (with certain limited exceptions) have been distributed in the United States exclusively either through Steelmasters or Ercona, each of which conducted activities from its offices maintained in the City of New York. The

3. While the plaintiffs served the summons and complaint on Steelmasters and Ercona as a managing agent for Zeiss Jena, the papers make it clear that for the purposes of this motion the contention is that at and prior to the service of process, Ercona was the managing agent.

4. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); French v. Gibbs Corp., 189 F.2d 787 (2d Cir.1951); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33 (2d Cir.

1948); Hutchinson v. Chase & Gilbert, 45 F.2d 139 (2d Cir.1930).

5. Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir.1960). The claim there was in negligence and jurisdiction rested on diversity; in the instance case the claim rests upon a federal statute.

6. 186 F.2d 707 (2d Cir.), cert. denied, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618 (1951).

7. 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

relationship between Zeiss Jena and each corporation covers two periods—from May, 1950 to June, 1961 when Steelmasters was the nominal and direct medium of contact with Zeiss Jena, and thereafter when Ercona was directly named in an agreement with Zeiss Jena, although Ercona played a significant role in the transaction of business in both periods.

Zeiss Jena's first contact with either local defendant came in 1950. In May of that year it entered into a written agreement with Steelmasters under which the latter was granted the exclusive right to distribute all Zeiss Jena products in the United States. Although the relationship between the two formally terminated in June, 1961, what transpired during Steelmasters' period has bearing on the issue here, since Ercona had continuous contact with Zeiss Jena in the prior period and played an active role in the distribution of its products. On May 20, 1950, at or about the time the Steelmasters agreement was signed, Ercona was organized by Steelmasters as an affiliate corporation "* * * in order to do business, among other things, as the exclusive sales agent and representative of * * * Zeiss Jena * * * for the sale of goods manufactured by Zeiss Jena." [8] During this eleven-year period, in effect Steelmasters was the importer and Ercona was the distributor in the United States. The goods were billed to Steelmasters and turned over to Ercona at cost plus actual expenses. The billings were in excess of $150,000 per year.

The Zeiss Jena-Steelmasters agreement of May, 1950 obligated Steelmasters actively to promote and sell Zeiss Jena products; not to deal in products competitive with those of Zeiss Jena; to employ experts trained in the Zeiss Jena factories; to report market conditions in the United States and to render annual reports of Steelmasters' sales activities; to agree with Zeiss Jena upon retail prices and to control the observance of such prices by its [Steelmasters'] customers; not to sell to wholesalers and exporters and to instruct retailers that the products must be sold to consumers directly and not exported.

The defendants contend that most of the provisions of this agreement were honored more in the breach than in the observance; that many of the obligations of Steelmasters recited above were dead letters. They also assert (but disputed by the plaintiffs) that the agreement by its terms expired in 1952 and that although the relationship continued until June, 1961, this was only with respect to the net prices to be paid for the merchandise and the terms of payment. But whether the terms of the 1950 agreement were in fact fully observed or otherwise, the undisputed fact is that Steelmasters, through Ercona, was the exclusive medium whereby for a period of eleven years, until June, 1961, all Zeiss Jena products [9] were distributed through the United States. During this period Ercona advertised in various trade publications and scientific journals as the "Exclusive American Agency" or "Exclusive American Representatives" for Carl Zeiss, Jena; its letterhead bore a similar description and Zeiss Jena itself in a scientific journal similarly described Ercona. Zeiss Jena prepared and sent printed material to Steelmasters "because at that time Steelmasters was our agent in the United States." The material included circulars, catalogues, leaflets, brochures and other promotional items. Over this eleven-year period Zeiss Jena received at Jena, Germany an average of 100 to 150 communications annually from persons or companies resident in the United States inquiring about its products. Zeiss Jena's standard response was to refer the inquirer to Ercona, which "represents our interests in the United

---

8. Notice of opposition filed by Ercona in the United States Patent Office (Plaintiff's Exhibit R).

9. With the exception of Werra cameras and, at times, binoculars.

States." During the Steelmasters era Zeiss Jena conducted annual meetings at Jena attended by its foreign distributors. Ercona representatives, as well as Steelmasters, attended because, as stated by one witness, "the Ercona corporation is the sales company for our products." Ercona representatives made trips to Jena in addition to those required for attendance at the annual meeting of foreign representatives. There can be little doubt but that from 1950 to 1961, for all practical purposes, Ercona and Steelmasters were one and the same insofar as its relationship to Zeiss Jena is concerned except in the matter of billing.

In June, 1961, an agreement, currently in effect, was entered into directly with Ercona. The agreement is for ten years and is automatically continued unless six months' notice before expiration is given. It confers "on distributor [Ercona] the sole agency right in the territory of the United States and its possessions" for products manufactured by Zeiss Jena.[10] In general, the same course of dealings and conduct with respect to advertising, literature, attendance at annual meetings, and referral by Zeiss Jena of American inquiries to Ercona continued as in the 1950–1961 period. Zeiss Jena does not sell to any other firm or corporation in the United States the type of merchandise it sells to Ercona. Ercona has not and does not sell products competitive with those of Zeiss Jena. Sales of Zeiss Jena products continued to be in excess of $150,000 per year.[11]

The relationship between Zeiss Jena and Ercona is not confined to the sale and distribution of merchandise. An integral part of the arrangement between Zeiss Jena and Steelmasters, and later Ercona concerned the protection in the United States of the Zeiss Jena trademarks, and this aspect of their relationship cannot be ignored. The actions and course of conduct between the parties during the entire period from 1950 to date in the assertion by Ercona of the trademark rights in connection with the Zeiss Jena products sold in this country is of substantial significance.[12] Apart from the substantial sales and distribution of Zeiss Jena products by Ercona, its activities in protecting Zeiss Jena's interests in the trademarks and the good will attached thereto was neither incidental nor casual.

In the instance of each agreement, Zeiss Jena assigned trademarks for use in, and furthering, the sales of Zeiss Jena products. Under the 1950 Steelmasters agreement, Zeiss Jena transferred to Steelmasters for the duration of the agreement its rights to the trademarks registered in the United States and Steelmasters undertook "to safeguard the interests of Carl Zeiss [Jena]" and to take all necessary steps toward that end. Rather significantly, from the origin of the relationship down to the present, it was Ercona, whether the assignment was to it or to Steelmasters, that appeared in various litigations in this Court, the District Court for the District of Columbia, and in proceedings before the Patent Office. Its appearance in each instance was as the "agent and representative" of Zeiss Jena. While officers of Ercona and Steelmasters dismiss as a businessman's expression, and without legal significance, the various references to Ercona as the "exclusive American sales agent for Zeiss Jena," appearing on its letterhead, publications and advertising over the same eleven-year period, the representations contained in court documents drafted by attorneys cannot be so readily dismissed.

In a suit filed by Ercona in September, 1957, in the District Court for the District of Columbia against the Commis-

10. In addition to Werra cameras, the following were excluded: photographic lenses mounted in cameras, field and opera glasses, and surveying apparatus.

11. Under a stipulation of the parties precise figures have not been furnished.

12. Cf. United States v. Scophony Corp., 333 U.S. 795, 814, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

sioner of Patents and the plaintiffs' wholly owned subsidiary, Ercona there alleged that it "is the sole and exclusive sales representatives in the United States, for * * * merchandise and equipment manufactured by Carl Zeiss Foundation,[13] of Jena, Germany, and its affiliates and subsidiaries, and has been since prior to May of 1950, and still is such sale and exclusive sales agents." In that action Ercona, based upon the May, 1950 agreement and the assignment of trademarks referred to therein, sought a declaratory judgment establishing its right to the marks. Here again it was acting for Zeiss Jena since, as already noted, it held the trademark in trust during the existence of the agreement and was required to reassign it. In this instance the complaint alleged, somewhat significantly, that it had acquired the trademarks by assignment from "plaintiffs' affiliated corporation," Zeiss Jena.

In 1957, in an interference proceeding pending in the United States Patent Office relating to a trademark used on merchandise distributed by Ercona, the latter, with reference to the 1950 Steelmasters agreement, stated, "Section 8 provides for the reassignment to Carl Zeiss, Jena, at the termination of the distributorship, of all the trademarks, registrations, and all other rights * * which had been transferred *to protect the interests of said Carl Zeiss, Jena.*" (Emphasis supplied.) Ercona further stated that the registration thereunder attacked was "legally owned by [Ercona], who, nevertheless, held it in trust for Carl Zeiss, Jena." Parenthetically, it is noted that although the defendants assert this contract, except as to net prices and terms of payment, expired of its own force in June, 1952, the representation was made that it "still is in full force and effect." A year earlier, in 1956, in the same proceeding, Ercona's vice president filed an affidavit wherein, after referring to Ercona as the exclusive dis-

tributor in this country of Carl Zeiss products, he stated, "In the year 1951, at the request of Carl Zeiss of Jena, [Ercona] applied for registration of this mark in its own name * * * on the express agreement that [Ercona] would hold this trademark and the registration thereof, in trust for said Carl Zeiss of Jena, to be returned and assigned to them on request, or on the termination of the distributorship, neither of which eventualities has thus far occurred." Also in 1956 Ercona filed an action in this Court against the Collector of Customs involving the importation of goods by a wholly owned subsidiary of plaintiffs which allegedly infringed upon the trademarks assigned by Zeiss Jena to Ercona. Ercona described itself in the complaint in that action as "exclusive agent or representative of various factories located in foreign countries."

In still another action, in the District Court for the District of Columbia, involving Zeiss Jena assigned trademarks which Ercona as plaintiff was seeking to protect, its vice president, when questioned whether Zeiss Jena or Ercona first used the trademarks in the United States, testified, "We were the representative of Carl Zeiss, Jena. * * * We are the United States of America sales representative." While these various statements and references were made by Ercona in the different actions brought by it in the courts of the United States, Zeiss Jena and its counsel were kept fully advised as to the proceedings.

The pattern of representation by Ercona with respect to the Zeiss Jena trademarks continued after the 1961 agreement. An essential part of that agreement relates to trademarks on goods to be distributed by Ercona in the United States. Zeiss Jena executed an assignment of designated trademarks to Ercona. Zeiss Jena and Ercona acknowledged they "are aware of the endeavours of others to secure unto themselves the

---

13. An affiliate of Carl Zeiss, Jena.

right to the use of" the assigned trademarks. They agreed jointly to proceed against any such claims and to take the necessary legal action, whether before the United States Patent Office or courts to effect cancellation of the asserted claim of the unnamed party. Zeiss Jena agreed on its part to make available all documentation "in order to prove and defend its rights to exclusive use of said trademarks for which claims may exist in the United States." Finally, Zeiss Jena and Ercona agreed "to defend their rights" and to share all legal expenses. The fact is that the unnamed party whose right to the use of the trademarks referred to in the agreement was challenged and against whom the legal attack was to be directed are the plaintiffs in this action. It is also acknowledged that trademarks assigned to Ercona under the June, 1961 agreement are included among the claims which are the subject matter of plaintiffs' present action. In December, 1961 Ercona itself filed notice of opposition in the United States Patent Office to one of the trademarks which plaintiffs herein registered. While it is recognized that Ercona had and has an interest in the trademarks so long as it distributes the Zeiss Jena products, the trademarks were and are being held in trust for the benefit of Zeiss Jena; the dominant right to the trademarks is claimed by Zeiss Jena and Ercona has asserted Zeiss Jena's claims to protect the latter's interests.[14]

The totality of facts reflecting the conduct of the parties forecloses the view that their relationship can be circumscribed simply as that of buyer and seller, or manufacturer and exclusive distributor. The evidence abundantly establishes, whatever standard is applied, whether that of "consent," "doing business" or "presence,"[15] that Zeiss Jena had more than the necessary minimum contacts within this district so that it is not unfair or unjust that it be required to respond to this suit. These contacts were far from episodic or occasional. They were continuous and substantial and reflect in practical and everyday terms the commercial concept of doing business. The defense of Zeiss Jena's trademarks and the protection of its good will entrusted to Ercona was an important part of the Zeiss Jena business life—perhaps as important as the distribution of its goods in this country. Ercona with its office and officers in this district was the medium whereby those activities were carried on and the nerve center from which they radiated to other parts of the United States.

Upon the totality of all the facts—the continued dealings and course of conduct between Zeiss Jena and Ercona—it does not offend "traditional notions of fair play and substantial justice" to require Zeiss Jena to defend the suit here. In the light of the continued representation of its interests by Ercona, it will suffer no inconvenience, especially so since it has in this and other courts sought to defeat the very claims now advanced by the plaintiffs in the pending suit. This conclusion makes it unnecessary to detail various other factors relied upon by the plaintiffs, such as the listing of Zeiss Jena in the building directory where Ercona is located and in the New York City telephone directory, or those advanced by the defendants in resisting jurisdiction. While they may have bearing in some situations, they are not of special significance in the instant case.

■    The same facts which support jurisdiction also warrant the conclusion that Ercona at the time of service was a managing agent of Zeiss Jena within Rule 4(d) (3).

14. See generally, G. H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499 (2d Cir.), cert. denied, 323 U.S. 715, 65 S. Ct. 41, 89 L.Ed. 575 (1944); Scandinavia Belting Co. v. Asbestos & Rubber Works of America, Inc., 257 F. 937 (2d Cir.), cert. denied, 250 U.S. 644, 39 S.Ct. 494, 63 L.Ed. 1186 (1919).

15. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957).

The motion to dismiss for lack of jurisdiction of Zeiss Jena and to quash service of process is denied. The motion for leave to appeal pursuant to section 1292 (b) of Title 28 United States Code, is likewise denied.