A & M TRADING CORPORATION, *ET AL.*, PLAINTIFFS-RE-SPONDENTS, v. PENNSYLVANIA RAILROAD COMPANY, . . . ISBRANDTSEN COMPANY, INC., *ET AL.*, DEFEND-ANT-APPELLANT, AND SEVENTEEN OTHER CASES.

Argued October 19, 1953—Decided November 16, 1953.

Mr. *Harry E. Walburg* argued the cause for appellant Isbrandtsen Company, Inc. (*Messrs. Cox & Walburg*, attorneys).

Mr. *John A. Ackerman* argued the cause for respondents (*Messrs. Toner, Crowley, Woelper & Vanderbilt*, attorneys for respondents A & M Trading Corporation, *et al.*, Susan Julia Andrechick, *et al.*, New Jersey Bell Telephone Company, Irene Schindel, *et al.*; *Messrs. Wilentz, Goldman, Spitzer & Sills*, attorneys for respondents Ella Abegg, *et al.*, James F. Boncek, *et al.*, Una Christina Gumbs, *el al.*, Mary Chesman, *et al.*; *Messrs. Kristeller & Zucker*, attorneys for respondents Bernard Ackerman, *el al.*, M & J Tracey, Incorporated, Vincent De Filippo, *et al.*; *Messrs. Stryker, Tams & Horner*, attorneys for respondent The American Agricultural Chemical Company, etc.; *Mr. Louis J. Milano*, attorney for respondent Anna L. Marshall, *et al.*; *Mr. John P. McGuire*, attorney for respondents City of South Amboy, *et al.*; *Messrs. Shaw, Hughes & Pindar*, attorneys for respondents Catherine Carrol Duggan, etc., *et al.*; *Mr. Jerome L. Yesko*, attorney for respondent Luke J. Lyons; *Mr. Harry Lane, Jr.*, attorney for respondents Alfred Eckman, *et al.*; *Mr. John C. Stockel*, attorney for respondents George Manvel Applegate, Jr., etc., *et al.*).

The opinion of the court was delivered by

WACHENFELD, J. This appeal, taken under *Rule* 4:2-2(*c*), now *R. R.* 2:2-3(*a*)(3), is from an order made in the court below denying the motion of the appellant Isbrandtsen Com-

pany, Inc., seeking: (1) to set aside the service of summons and complaint upon Isbrandtsen in each cause of action; (2) a dismissal of the plaintiffs' complaints; (3) judgments in favor of Isbrandtsen. The cause was certified here on our own motion.

The appellant alleges it is immune from the service of process because on May 19, 1950 and subsequent thereto it performed no act and concluded no contract in New Jersey relating to the cause of action alleged against it, and its activities do not subject it to the jurisdiction of the court inasmuch as they do not constitute "doing business" in this State.

Relief was denied upon the ground that Isbrandtsen was "doing business" in this State at the time the summonses and complaints were filed and served.

There were motions directed to each of the many actions, but they are identical, were argued jointly below, and were disposed of by the entering of a single order. The cases were consolidated for the purpose of this appeal.

The suits sought recovery for personal injuries and property damage sustained as a result of "a violent explosion of anti-tank and anti-personnel mines and dynamite in or about South Amboy, New Jersey," caused by the alleged negligence of all the defendants in various particulars. The explosion was devastating and the magnitude and extent of the disaster is probably best illustrated by the fact that there were approximately 8,500 parties-plaintiff, most of them residents of New Jersey.

Process was served upon Roy F. Pierce, treasurer of the defendant company, who was concededly an "officer" of the defendant within the meaning of *Rule* 3:4–4(*d*), now *R. R.* 4:4–4(*d*), and a proper agent for service of process.

Isbrandtsen Company, Inc., hereinafter referred to as Isbrandtsen, is a corporation of the State of New York, with offices and principal place of business in New York City. For years it has been engaged as a common carrier in the steamship business. Its cargo vessels regularly ply between United States, European and Far Eastern ports; it

does not engage in inter-coastal shipping. Between May 1950 and July 1952 it owned and operated 15 cargo vessels, of which 12 were used in "line service," that is, regularly scheduled sailings in the Far East, round-the-world service, and in trans-Atlantic service. In that service it operated, during the period, six additional vessels which were either time-chartered or bare-boat-chartered.

Of the three remaining vessels owned by it, one, during the period in question, was operated in the transportation of cattle between the United States and foreign ports, and the remaining two were engaged in tramp bulk service. The appellant also acted as general agent in the operation of some 20 other vessels plying between the United States and foreign ports or between foreign ports exclusively. Isbrandtsen was not licensed to do business in the State of New Jersey, as provided by statute, nor did it have an office, telephone, records, or bank accounts within the State.

The company practically concedes that prior to May 1, 1950 and only a few weeks before the explosion it was "present" in New Jersey, using docking facilities at Pier 3, Hoboken, as the terminal for its vessels. It asserts this arrangement terminated May 1, 1950 and that cargo was delivered to the last ship docking there by May 16, 1950. In effect, it admits it was doing business in the State of New Jersey up to that date.

Isbrandtsen contends after May 1, 1950 its vessels berthed at Pier 7, Bush Terminal, in Brooklyn, instead of as heretofore.

Within two years after the South Amboy accident, 17 vessels owned or chartered by Isbrandtsen made 18 calls at New Jersey ports. Of these, two were commercial visits made by time-chartered vessels discharging cargoes at Sayresville, New Jersey, for the National Lead Company. The rest of the vessels were engaged in transporting military cargoes for the Army under its direction, the loading of which was supervised by the Army, and one ship lay at anchor at the Navy Explosive Anchorage off Leonardo on the date of the explosion.

There were eight loadings at Caven's Point, four at Claremont Terminal, and three at Port Newark. Caven's Point is owned by the United States, which has accepted exclusive jurisdiction over it from the State of New Jersey. Claremont Terminal and Port Newark were subleased to the Army, which maintained offices and whose officers and men were present during the loading and handling of military cargo.

For the past 4½ years the defendant has continued to employ John R. Strangfeld, a resident of Allendale, New Jersey, who occupies his time in the company's behalf in this State. Among his other duties, during the period in question he solicited general cargo, although the actual booking was done through a New York office. He contacted about 200 customers in New Jersey, seeking business, and described himself as "contact man and public relations man." In addition to courting new business, his efforts were bent toward keeping the customers happy, "endeavoring to maintain their good will, to check their trend in business, the areas in which they may be doing business and with which we are not acquainted but possibly could render services and obtain cargo, * * * to see if their relations with Isbrandtsen Company are first rate, if there are any outstanding complaints they might have or if there is anything special that is desirable we are not doing and they prefer to have us do, and the general trend of cargo with them and business conditions in their various world markets." He also discussed shortages and claims with the customers, primarily to determine whether or not there was a shortage and ascertain if the company was at fault. He performed these functions regularly, averaging one day every two weeks in New Jersey during the entire period in question, being paid a salary plus expenses.

Additionally, there were maintenance operations and overhauls on Isbrandtsen's ships performed with a degree of regularity at the Todd and Bethlehem Steel Shipyards in Hoboken, New Jersey. Between the dates in question three vessels were present in New Jersey for maintenance and over-

haul, but there is a dispute as to whether the company specified the Todd Yard in Hoboken as its choice or whether the situs was determined entirely and independently by the repairing contractors.

Between May 1, 1950 and February 11, 1953 the appellant employed the services of the United New Jersey & Sandy Hook Pilots Beneficial Association on 15 occasions to pilot ships owned or chartered by it or for which it was acting as general agent to or from New Jersey docks and facilities, and the respondents insist the contracts between Isbrandtsen through its masters and individual pilots were executed in New Jersey covering services to be performed in the territorial waters of New Jersey. The company alleges it dealt directly with the association rather than with the pilots and the association was engaged in business in New York and the assignments of pilots are always made through the joint office in New York of the New York and New Jersey Pilots Association solely on a rotation basis and without reference to their membership in one or the other of these associations, contending that the matter was entirely beyond the control of the company.

The respondents claim when ships called at facilities in New Jersey, including calls for government cargoes, Isbrandtsen's employees continued to perform duties and functions and its representatives were sent to the scene of the particular operation to assist the master in supervising the loading and unloading and stevedoring operations. It is also urged that although the facilities of the company for carrying passengers were limited, at least one commercial and three military passengers embarked on their ships while they were at New Jersey docks during the period in question and that passengers normally booked passage through travel agents, of which there were a number in New Jersey.

The factual situation was developed by affidavit and depositions, the interpretation of the testimony so taken not always being agreed upon.

The doctrine enunciated by the United States Supreme Court in *International Shoe Company v. State of Washington,*

326 U. S. 310, 66 S. Ct. 154–158, 90 L. Ed. 95 (1945), is to the effect that the due process requirements of the 14th Amendment are satisfied if the suit does not offend "traditional notions of fair play and substantial justice" but that each case must turn upon the facts there involved, the court being required to decide whether the quality and nature of the activity of the corporation within the state is so considerable as to come within the pronouncement made:

"The demands of due process * * * may be met by such contacts of the corporation with the state of the forum as make it reasonable * * * to require the corporation to defend the particular suit."

Our inquiry, therefore, is whether or not the rule so embraced and determined by the court of ultimate authority is trespassed upon here or if it is at variance with our own interpretations.

In the United States District Court, Chief Judge Forman refused to quash service of process against this same company in an action arising out of the same explosion here involved. *Ackerley v. Commercial Credit Co., D. C.*, 111 F. Supp. 92, 100 (1953). Initially, the court held, without more, the loading and unloading activities of Isbrandtsen in New Jersey were sufficient to constitute doing business in the State for the purpose of subjecting the company to a suit there brought.

The court swept aside Isbrandtsen's claim that this conclusion could not be sustained because much of the loading was at Caven's Point, which was owned by the United States and over which the United States had taken exclusive jurisdiction from the State of New Jersey pursuant to 40 U. S. C. A., sec. 255, and R. S. 52:30–1, 52:30–2, and because the activities, conducted on such federally controlled property, cannot be considered as being done in New Jersey.

It distinguished the many authorities submitted on behalf of the company and pointed out there was no question of regulation by the State in the case pending. "New Jersey, when it ceded jurisdiction of Caven's Point to the United

States, reserved the right, as it was entitled to do, of serving process issued out of any state court in any civil or criminal proceeding," citing *Knott Corp. v. Furman,* 4 *Cir.,* 163 *F. 2d* 199, *certiorari* denied, 332 *U. S.* 809, 68 *S. Ct.* 111, 92 *L. Ed.* 387 (1947). It held Isbrandtsen's activities conducted at Caven's Point, a federal enclave, did not require the court to ignore those activities in deciding whether it was doing business in New Jersey.

As to the Claremont Terminal and the Port Newark areas, it determined: "In neither of these cases has the State of New Jersey lost its jurisdiction save as to matters which would conflict with the federal government's purposes in using the lands," relying on *Penn Dairies v. Milk Control Commission,* 318 *U. S.* 261, 63 *S. Ct.* 617, 87 *L. Ed.* 748 (1943).

The court concluded:

"* * * in view of the periodic calls of Isbrandtsen's vessels at New Jersey ports, both at the federal enclave of Caven's Point and at ports under New Jersey's jurisdiction, in view of Isbrandtsen's other substantial activities abandoned only immediately before the explosion, and in view of its current practice of sending its agent to New Jersey to confer with potential shippers, Isbrandtsen Company, Inc. was doing sufficient business in New Jersey at the time it was served in these suits to make it reasonable and fair for it to defend in this court."

▓ We have come to a like view, basing our conclusions on the record before us, including the shipping and docking practices of the appellant company, together with the activity of its employee, Strangfeld.

We have also taken into consideration, because we think it significant, evidence not before the federal court, to wit, the maintenance operations and overhauls of the appellant's ships at the Todd and Bethlehem Steel shipyards in Hoboken and the sending of representatives to the scene of the particular operation to assist the masters in supervising the loading and unloading of the cargo operation, not of great moment by themselves but nevertheless yielding a slight addition to the "mere solicitation" rule, *Green v. Chicago,*

*B. & Q. R. Co.,* 205 *U. S.* 530, 27 *S. Ct.* 595, 51 *L. Ed.* 916 (1906), sufficient to bring it within the boundaries of the "solicitation plus" doctrine set forth in *International Harvester Co. v. Commonwealth of Kentucky,* 234 *U. S.* 579, 34 *S. Ct.* 944, 58 *L. Ed.* 1479 (1913).

In *Frene v. Louisville Cement Co.,* 77 *U. S. App. D. C.* 129, 134 *F. 2d* 511, 517, 46 *A. L. R.* 926 (1943), the court, discussing the "solicitation plus" rule, held business activities need not reach the final stage of contract and "very little more than 'mere solicitation' " is required to bring about the result that a corporation is "present" for jurisdictional purposes.

There are many cases cited in the briefs on both sides, each, in turn, radiating light on the varying aspects and different phases of the same or similar problems as they were considered and adjudged by the courts mentioned. All the opinions, however, consistently and warily point out with emphasis that each case must be determined on its own bottom.

 Our rule is not otherwise and the latest expression is found in *Westerdale v. Kaiser-Frazer Corp.,* 6 *N. J.* 571 (1951). Quoting with approval from *Yedwab v. M. A. Richards Corp.,* 137 *N. J. L.* 448 (*Sup. Ct.* 1948), we held:

"There is jurisdiction *in personam* over a foreign corporation only if it is doing business in the State through its agents, and then only if there is service of process within the State upon a duly authorized officer or agent of the corporation. *Roll-o-matic, Inc., v. J. B. Marshall, Inc.,* 117 *N. J. L.* 463; *Consolidated Textile Corp. v. Gregory,* 289 *U. S.* 85, 53 *S. Ct.* 529, 77 *L. Ed.* 1047; *Washington-Virginia R. Co. v. Real Estate Trust Co.,* 238 *U. S.* 185, 35 *S. Ct.* 818, 59 *L. Ed.* 1262; *James-Dickinson Farm Mortgage Co. v. Harry,* 237 *U. S.* 119, 47 *S. Ct.* 308, 71 *L. Ed.* 569; *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 *U. S.* 333, 45 *S. Ct.* 250, 69 *L. Ed.* 634. In the absence of the element of consent, in one form or another, the doing of business is indispensable to the fulfillment of the requirement of due process of law guaranteed by the Fourteenth Amendment of the Federal Constitution. *Riverside & Dan River Cotton Mills v. Menefee,* 237 *U. S.* 189, 35 *S. Ct.* 579, 59 *L. Ed.* 910. The State's jurisdiction *in personam* does not extend beyond its own borders. Process in ac-

tions of this class does not run from one state to another. *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565.

'Doing business' is a term that is not susceptible of precise definition automatically resolving every case. Each case turns upon its own circumstances. The determinative is the essence of the transaction or series of transactions."

We are in accord with the result arrived at below, and for the reasons herein expressed the order denying the appellant's motion is affirmed.

*For affirmance*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.