Harry A. DODD, Plaintiff,

v.

RAHWAY VALLEY COMPANY, Lessee, Defendant and Third-Party Plaintiff (LEHIGH VALLEY RAILROAD COMPANY, Eppinger Russell Co. and Atlantic Coast Line, Third-Party Defendants).

Civ. A. No. 223-56.

United States District Court
D. New Jersey.

April 18, 1957.

Albert G. Besser, Newark, N. J., for third-party defendant Atlantic Coast Line.

**600**

James J. Carroll, by Frank Fink, Newark, N. J., for defendant and third-party plaintiff Rahway Valley Co.

HARTSHORNE, District Judge.

■ Plaintiff Dodd, a New Jersey resident, and an employee of defendant Rahway Valley Company, brought suit in this Court against Rahway Valley under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U.S. C.A. § 51 et seq., and under the Safety Appliance Act, 27 Stat. 531, as amended, 45 U.S.C.A. § 1 et seq., for an accident occurring in New Jersey. Rahway Valley impleaded Atlantic Coast Line Railroad Company and others, alleging that the accident occurred on an Atlantic Coast Line car due to the fault of that company and the other defendants. Rahway Valley first attempted to serve Atlantic Coast Line by serving at Newark the ticket agent, an employee of the Pennsylvania Railroad, not of the Atlantic Coast Line, because that agent sold tickets which covered passage over the Pennsylvania, and later the Atlantic Coast Line trackage. This service was attempted under the Federal Rules, which specifically provide that a corporation, foreign to the district (of New Jersey, which Atlantic Coast Line was), can be served, if all other means fail, as they did, "in the manner prescribed by the law of the state in which the service is made * * *." F.R.Civ.P. 4(d) (7), 28 U.S. C.A. The New Jersey Rules permit service "upon a * * * foreign corporation by serving * * * any servant of the corporation within this State acting in the discharge of his duties * * *." N.J.R.R. 4:4–4(d). It has long been settled law, Federal and State, both that such a ticket agent as the above is not a servant or managing or general agent of the connecting carrier, but a servant of the primary carrier, where the ticket is bought, and also that his above activities alone do not constitute "doing business" by the foreign corporation within the state of service. See the many authorities collated in Hedge v. Pennsylvania R. Co., 1926, 132

A. 492, 4 N.J.Misc. 315. Accordingly, this Court quashed such service.

Thereafter Rahway Valley caused service to be made in Newark upon a dining car steward, wearing an Atlantic Coast Line uniform, on a dining car belonging to the Atlantic Coast Line, attached to a train being operated by the Pennsylvania Railroad. Thereupon Atlantic Coast Line again moved to quash this last service, on similar grounds.

As is made clear in Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, 542, two questions are raised by such a motion. The first is the question whether the state *seeks* to assert jurisdiction under that set of facts, the second is whether the assertion of jurisdiction by the state is permitted, under the circumstances, by the Constitution of the United States. Furthermore, as *Partin* says: "Because a state may exercise jurisdiction, it does not follow that it does do so, much less that it must." 202 F.2d at page 542. Since Rahway Valley, in serving Atlantic Coast Line, has here pursued state procedure, as authorized by the Federal Rules, we here, to answer the first question, seek to ascertain the intent of the sovereignty authorizing the service procedure used, i. e., the State of New Jersey. Though this point is somewhat academic, since the New Jersey rule and the Federal rule seem largely the same as to the crucial question as to what constitutes "doing business" within the jurisdiction within the intent of the service procedure, Ackerley v. Commercial Credit Co., D.C. N.J.1953, 111 F.Supp. 92. Indeed, as will hereafter appear, this Federal and New Jersey rule appears to be substantially more liberal than the rule in that regard as applied in certain other jurisdictions.

■ On one point, however, all courts seem to agree, to wit, that in determining what is "doing business", both within the intent of the service procedure and within the requirements of the Constitution "each case must turn upon the facts there involved." A. & M. Trading Corp. v. Pennsylvania R. Co., 1953, 13

N.J. 516, 523, 100 A.2d 513, 516, where the highest New Jersey court adopts "the doctrine enunciated by the United States Supreme Court in International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154–158, 90 L.Ed. 95", as well as *Ackerley*. Accordingly we turn to the facts.

Since the determinative question is whether the foreign corporation, which is inevitably doing business elsewhere, is also "doing business" in the jurisdiction where it is served—New Jersey—it will suffice to indicate what Atlantic Coast Line is doing in New Jersey, without detailing what it is doing elsewhere, save to say that the bulk of its business is done elsewhere. In this regard the facts substantially are that Atlantic Coast Line is engaged within the State of New Jersey in two general categories of activities:

(1) The first kind of activity is that of the solicitation of business, both freight and passenger. To this end, one of its representatives, stationed at its New York City office, comes to New Jersey and regularly solicits freight business throughout the Northern part of the state. In addition, another Atlantic Coast Line representative comes from its Philadelphia office to the Southern part of New Jersey, and there also solicits freight business, but this is only occasional and infrequent, since there is much heavier industry in North, than in South, Jersey. The passenger solicitation by the Atlantic Coast Line from within the State of New Jersey is also occasional and infrequent. This solicitation is all of it mere solicitation, that is to say, while contracts for freight and passenger traffic result, and such traffic into and out of the state obviously also results, else the above solicitation would not continue as it does, the contracts for such freight and passenger traffic are consummated outside New Jersey.

(2) Atlantic Coast Line conducts a restaurant business, regularly and with great continuity, within the State of New Jersey. This restaurant business is not of the ordinary kind, in that it is con-ducted on wheels—in the dining and tavern cars attached to certain trains running daily through New Jersey between New York and Florida. Each of these trains stop in both directions, at both Newark and Trenton. These three trains are the crack trains of the Atlantic Coast Line, the East Coast Champion, the West Coast Champion, the Florida Special, operated as a train by the Pennsylvania Railroad on its New Jersey trackage, and by the Atlantic Coast Line as a train, as well as a restaurant, on its trackage in the South. But that the Atlantic Coast Line conducts this restaurant business all through the State of New Jersey is clear. It owns the cars. It supplies the food and drink served. It provides, and pays, the employees in such cars. It retains all receipts from the service of meals and beverages. Of course the Pennsylvania Railroad, controlling the movement of the train, is also given the right to discharge any such employee for cause, this cause obviously meaning any possible interference of such dining car employee with the movement and conduct of the train, as such. But the Atlantic Coast Line obviously has the right to fire the dining car stewards, just as much as it has the right to stop paying their wages. It clearly operates the dining and tavern cars, and their service as a restaurant, as its own operation. Since these three trains every day run both North and South through New Jersey, and make two stops on each trip, this restaurant business is conducted within the State of New Jersey for many hours every day, not only for the use of out-of-state passengers, but, with their stops in New Jersey 12 times every day, for the convenience of passengers coming from, and going to, New Jersey. Not only so, but since the Atlantic Coast Line runs these restaurants in connection with these crack trains, among the longest and fastest in the entire United States, it conducts this business, not as a mere unimportant incident, but as an important and substantial part of its entire passenger activity. That this restaurant

business is regular and continuous is clear. That it alone constitutes the transaction of business seems equally clear.

So the question is, whether this regular, continuous conduct of a restaurant business within the State of New Jersey, plus the regular solicitation of freight business within the State of New Jersey, resulting in shipments into and out of the State, constitutes "doing business" within the State of New Jersey, first within the service procedure intent, and second within constitutional requirements. Bearing in mind that, as to this statutory intent, we look to the intent of the New Jersey procedure —similar as it is to the Federal intent principle—and that it is the facts that count, we turn accordingly to the New Jersey and Federal cases, to see what the settled principles are in that regard and what facts have been held to constitute such "doing business" within such procedural intent.

The leading New Jersey case in that regard is *A. & M. Trading*, supra, where, as noted, the Court expressly approved the Federal rule laid down in both *International Shoe* and *Ackerley* and in Frene v. Louisville Cement Co., 1943, 77 U.S. App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926.

*A. & M. Trading* clearly shows, 13 N.J. at page 525, 100 A.2d at page 517, that it is the intent of the New Jersey service procedure that, whatever else is included within the term, a foreign corporation is "doing business" within the state when its activities constitute "solicitation plus". Moreover, as *A. & M. Trading* further says, and apparently approves, *Frene* held that such "business activities need not reach the final stage of contract and very little more "than mere solicitation" ' is required to bring about the result that a corporation is 'present' for jurisdictional purposes." This mere solicitation without reaching the final stage of contract exists in all these cases, *A. & M. Trading, Ackerley, Frene, International Shoe*, and, as seen

above, as to the Atlantic Coast Line. The question in this aspect is, of what does that "very little more" consist, which suffices to constitute "doing business"? In *International Shoe*, for instance, this "very little more" consisted solely of the casual rental of a hotel room to aid the company's shoe salesmen in their solicitation. In *Frene* it consisted solely of the fact that the company's resident soliciting agent acted as a trouble shooter in smoothing out complaints, but with no authority to adjust contracts. Such activities are obviously incomparable to Atlantic Coast Line's activities here, in addition to its solicitation, of running a restaurant business in New Jersey every day, for many hours, with 12 stops a day in the state, in conjunction with its specially advertised train service. Similarly, in *Ackerley* and *A. & M. Trading*, which dealt with the same situation, i. e., the question whether the Isbrandtsen's Steamship Line was doing business in New Jersey, the "very little more" than the solicitation consisted of the loading and unloading of a vessel under supervision less than once a month in New Jersey, occasional overhauls of the vessel in New Jersey, not by Isbrandtsen, but by third parties, as well as other activities which had been abandoned before the cause of action arose. These can hardly compare with the constant conduct of this restaurant business by Atlantic Coast Line every day of the year. But, even if they could, *A. & M.'s* approval of *Frene* and *International Shoe* shows that New Jersey's intent in its service procedure was to cover situations at least as minimal as those set forth in *Frene* and *International al Shoe*.

Indeed, as *Partin* says, 202 F.2d at page 543, it would seem that *International Shoe* "made possible a wider assertion of State judicial jurisdiction than theretofore had been thought permissible". And as *Frene* says: "The trend has been toward a wider assertion of power over nonresidents and foreign corporations than was considered permissible when the tradition about 'mere

solicitation' grew up." 134 F.2d at page 516. In short, while *International Shoe* recognizes that the facts there show how little more than "mere solicitation" will suffice for valid service, that case does not say that same is the minimal requirement for valid service. Its real holding is, as *A. & M. Trading Corp.* construes it to hold, "that the due process requirements of the 14th Amendment are satisfied if the suit does not offend 'traditional notions of fair play and substantial justice' * * *." 13 N.J. at page 523, 100 A.2d at page 516.

But even if we do not, as thus indicated, discard the "very little more than 'mere solicitation'" as the minimal requirement for "doing business", which *Frene* thinks we should do, 134 F.2d at page 516, we have in the case at bar a very much greater activity on the part of Atlantic Coast Line than "mere solicitation plus". For, as already noted, Atlantic Coast Line has made an outstanding point of its regular, continuous transaction of business, on what it widely advertises as its crack trains, i. e., the conduct of a restaurant business within the State of New Jersey every day, for several hours, with 12 stops every day, for the convenience of New Jersey passengers, let alone the rest of the passengers on the train. Surely this transaction of business in and of itself, regardless of anything else, constitutes "doing business" within New Jersey, within the intent of the service procedure under both New Jersey and Federal law.

True, in *Hedge*, service on Atlantic Coast Line was held invalid. But, as noted previously, the Court's opinion there shows that none of the important facts presented to this Court were presented to it—concerning solicitation, concerning "solicitation plus", concerning the regular, continuous transaction of the restaurant business by the Atlantic Coast Line within the State of New Jersey every day of the year. *Hedge*, therefore, is no precedent under the present facts.

True, in Law v. Atlantic Coast Line R. Co., 1951, 367 Pa. 170, 79 A.2d 252, that court reached a contrary conclusion. But that is clearly for the reason that Pennsylvania is one of the states which, as is its right, adopts the strict, not the liberal, interpretation of its own statute, as to what constitutes doing business within a state on the part of a foreign corporation, so as to make it amenable to process. A comparison of the facts there, including the maintenance of a sizeable office in Philadelphia for the regular solicitation of freight and passenger business, with the holding of *International Shoe*, make it clear, not that *Law* attempts to overrule *International Shoe*, but that, as *Partin* says, "Because a state may exercise jurisdiction, it does not follow that it does do so, much less that it must." 202 F.2d at page 542. In other words, *Law* simply holds that the Pennsylvania service statute is not intended to reach foreign corporations, which do what Atlantic Coast Line does. That this is the true meaning of *Law* is made even more clear by *Partin*, which itself shows how restrictive the Pennsylvania law is in that regard. This conclusion indeed is reinforced by Lutz v. Foster & Kester Co., 1951, 367 Pa. 125, 79 A.2d 222, cited in *Partin*, 202 F.2d at page 544, where the Supreme Court of Pennsylvania similarly finds that even stronger facts than those involving the Atlantic Coast Line, let alone the facts involved in *International Shoe* and *A. & M. Trading*, do not suffice to permit the Pennsylvania courts to take jurisdiction of a foreign corporation. Indeed, this Pennsylvania restrictive rule is first laid down in Shambe v. Delaware & Hudson R. Co., 1927, 288 Pa. 240, on page 250, 135 A. 755, on page 758, where the court recognizes the existence of the broader rule, as in New Jersey, and Federally, but decides to adopt the more restrictive rule for Pennsylvania.

But since this divergence in the rules between different jurisdictions is simply a matter of state policy, the policy of Pennsylvania can not affect the policy of the New Jersey and Federal courts, which bind this Court, as above.

The final question is simply whether there is anything in the due process clause of the Constitution which prevents the State of New Jersey, and in turn, the Federal Courts, from carrying out the above intent of the New Jersey service procedural rule. Here we call to mind the fact, as was said, long ago, that the due process clause is no "strait-jacket". Twining v. State of New Jersey, 1908, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97, and that the states have wide discretion procedurally, despite the due process clause. Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. We also bear in mind the principle, as laid down in *International Shoe,* as above, that all that is required in that regard is that the service procedure shall not offend "traditional notions of fair play and substantial justice." 326 U.S. at page 316, 66 S.Ct. at page 158. Finally, it is no objection to a court's taking jurisdiction over a foreign corporation, that the cause of action sued upon had no relation to the corporation's activities within the state, or even that such cause of action did not arise within the jurisdiction. Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. In any event, here the cause of action did arise within the District of New Jersey, and it may well be that the shipment, causing the accident sued on, arose from the Atlantic Coast Line's above solicitations. It might be further noted that the fact that Atlantic Coast Line's activities within the State of New Jersey were all in the course of interstate commerce is quite immaterial. International Harvester Co. of America v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 589, 34 S.Ct. 944, 58 L.Ed. 1479.

Accordingly, since Atlantic Coast Line is regularly engaged within the State of New Jersey in solicitation, plus other activities much greater than those involved in *International Shoe,* in *Frene,* in *A. & M. Trading Corp.,* or in *Ackerley,* and since these activities in fact constitute what Atlantic Coast Line itself regards as a necessary adjunct to a particularly important part of its own business, which it regularly and continuously transacts within the State of New Jersey, it can not be concluded that to serve process on Atlantic Coast Line's own servant, when "acting in the discharge of his duties" in that activity is a violation of "traditional notions of fair play and substantial justice".

The motion of Atlantic Coast Line to quash the service of process herein will be denied. Enter order accordingly.