82 N.J. Super. 16 (1963)
196 A.2d 539
JESSIE GLASER, PLAINTIFF,
v.
THE PENNSYLVANIA RAILROAD COMPANY, A CORPORATION, ALSO KNOWN AS THE PENNSYLVANIA RAILROAD, ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, AND RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 9, 1963.
*18 Mr. Arthur M. Karl for plaintiff.
Mr. Raymond W. Troy and Mrs. Isabella L. Kirchner for defendants The Pennsylvania Railroad Company and Richmond, Fredericksburg & Potomac Railroad Company (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Barry C. Waldorf for defendant Atlantic Coast Line Railroad Company (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
CONSODINE, J.C.C. (temporarily assigned).
Jessie Glaser purchased from the Pennsylvania Railroad Company (Penn) a round-trip ticket for transportation from Newark, New Jersey, to Orlando, Florida, on a through train over the trackage of (1) Penn, (2) Richmond, Fredericksburg and Potomac Railroad (R.F. & P.), and (3) Atlantic Coast Line Railroad (Atlantic). For her return she procured a reserved car seat at the office of Atlantic in Florida. She sues for injuries sustained while on the trackage of R.F. & P. Her treatment was undertaken in Newark.
Plaintiff now sues the three railroads in this State. Service was made on Penn by serving its passenger agent at Newark, and on the other defendants (1) by leaving a copy of the summons and complaint with the passenger agent of Penn in Newark, and (2) by mailing a copy of the summons and *19 complaint with a covering letter, registered mail, return receipt requested, addressed to each of these defendants. Plaintiff premises the hand-service on the allegation that the two other defendants were doing business in this State and that Penn was their agent. She predicates mail service on R.R. 4:4-4(d), particularly the latter portion thereof which was added by the amendment of June 27, 1958.
There are three motions before the court. Penn seeks summary judgment as a matter of law, pursuant to R.R. 4:58. R.F. & P. seeks an order dismissing the action or, in lieu thereof, quashing the summons and return of service of summons on the grounds of lack of jurisdiction over its person, insufficiency of process, insufficiency of service of process, and the application of the rule of forum non conveniens. Atlantic moves to quash service on the jurisdictional ground that it does no business in this State, for dismissal on the ground of forum non conveniens, and for summary judgment on the ground that the accident did not occur on its lines.
The situs of the accident is admitted by R.F. & P. and denied by the other two defendants. Additionally, plaintiff, in her complaint, places the situs of the accident on the trackage of R.F. & P.
A discussion of the reason underlying the sale of a ticket for travel on several roads before arrival at the passenger's designation is not inappropriate here. The country as a whole is covered by a network of large and small railroads, many of which are under lease one to another. (Scholnick v. National Airlines, 219 F.2d 115 (6 Cir. 1955), applies to the lease type of arrangement and not to the instant case.) The Congress sought in 1887 to establish a coordinated system in the interest of the nation as a whole, the roads involved, and the passenger and freight clientele. 49 U.S.C.A. §§ 1 to 1542. This legislation followed the enactment of the so-called "Granger Laws" in the Middle West, the famous "Granger Cases" headed by Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77 (1877), and the depressions of 1873 and 1885 which terminated the local ownership of railroads *20 and saw the beginnings of great interstate systems out of their bankruptcies. Presently it is common knowledge that mergers of even these great interstate railroad systems have been encouraged in order to avoid a breakdown in our nationwide system that can be chaotic in times of peace and would be disastrous, if not ruinous, in times of war.
The powers of the Interstate Commerce Commission (I.C.C.) are largely defined in the Transportation Act of February 28, 1920, which must be read in conjunction with the Transportation Act of 1940 which "was intended, together with the old law, to provide a completely integrated interstate regulatory system over motor, railroad and water carriers." United States v. Pennsylvania R. Co., 323 U.S. 612, 618-619, 65 S.Ct. 471, 89 L.Ed. 499 (1945).
To force this plaintiff passenger to buy a ticket from Newark to Washington, another there to Richmond, and a third there to Florida, to seek out her trains at each road's terminus, to switch her seat reservation at each terminus, would hardly be in line with the integrated and economic system of roads envisioned by the Congress in its legislation over eight decades. The through or coupon ticket is for the convenience of the public and to facilitate and encourage travel. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917). It is sold under a joint tariff agreed to by the carriers concerned and filed by them with the I.C.C. This tariff provides that the carrier selling the ticket acts as agent of the others. The attendant limitation of liability on the ticket by the selling carrier as to its own line becomes the lawful condition upon which the service is rendered, binding alike on the carrier and its patron. Louisville & N.R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711 (1929).
It should also be pointed out that the record is destitute of proof that any of the defendants sought plaintiff's business or that any of them received compensation for selling the through or coupon ticket for use beyond its rail limit. It is even destitute of proof of general solicitation. The ticket was apparently *21 sought and purchased by plaintiff. There were other available modes of transportation to plaintiff, viz., bus, airline. She was not a captive to a single mode of transportation. The selling carrier was certainly a captive agent, and the word as used is not in the broad, legalistic sense.

PENNSYLVANIA RAILROAD COMPANY
Penn argues that its responsibility to plaintiff did not extend beyond its own lines, i.e., south of Washington. It relies on decisions of the United States Supreme Court. It is necessary to consider only one  Louisville & N.R. Co. v. Chatters, supra. There the court held that a railroad was under no duty, either by common law or statute, to transport or assume any responsibility for the transportation of a passenger beyond its own line.
Plaintiff briefs and argues that the words of the legend on the ticket ("Subject to tariffs, selling carrier is agent only  not responsible beyond its line except as law imposes liability for baggage. Non-transferable") are used by Penn to exculpate itself from liability. She does not differentiate between an accident on Penn trackage and an accident on the second of three roads (Penn being the first) involved in the interstate movement between New Jersey and Florida. As to the former, the argument would be valid, see Horelick v. Pennsylvania R. Co., 13 N.J. 349, 357 (1953), but the interstate commerce field has been pre-empted by the Congress and legislation rising therefrom in that regard is the supreme law of the land.
Under the Interstate Commerce Act (I.C.A.) no carrier by railroad may either extend or abandon its line or any part thereof except on the basis of a permissive order of the I.C.C. after notice and hearing. 49 U.S.C., § 1(18). There are severe penalties for violation, 49 U.S.C., § 1(20). And carriers by railroad engaged in interstate commerce must provide the services and transportation set out in their filed tariffs. 49 U.S.C., § 1(4), 2, 3, 4(1); 5(1); 5(2), 6 *22 section 6(1) requires the filing of tariffs over "through routes" showing joint or separately established rates. Under § 6(7) a railroad cannot lawfully provide transportation service for which it has not filed a tariff and it must provide service for all who present themselves to the extent of filed tariffs.
There is a specific provision in the I.C.A. for liability on the part of the initial and delivering carriers (49 U.S.C., § 20) as to shipments of goods and baggage. (As to ticket language here, see supra; and earlier, see Louisville & N.R. Co. v. Chatters, supra, 279 U.S., at p. 330, 49 S.Ct., at p. 332, 73 L.Ed. 711). Plaintiff asks the court to consider the failure of the Congress to legislate similarly as to passenger transportation as an oversight, with the result that a trial court of a state by erroneous interpretation would amend nunc pro tunc an Act of Congress. It is obvious why there is the differentiation in the legislative enactment concerning goods and baggage and the failure to enact similar legislation regarding passengers. See the Constitution of the United States of America, pp. 246, et seq. (1952 ed., rev. and ann.).
There are no decisions of our courts on the present facts except the recent decision in Berry v. The Pennsylvania Railroad Company, 80 N.J. Super. 321 (Law Div. 1963).
Horelick v. Pennsylvania, supra, had to do with egress from the terminal of the railroad-defendant. That terminal was not owned by the defendant. The accident occurred therein and that was the only egress available to the passenger leaving defendant's train. There was a duty on the defendant.
The Chatters case is the law of this State, and for that reason the motion of Penn for summary judgment is granted.

RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD ATLANTIC COAST LINE RAILROAD COMPANY
The Court requested and counsel briefed the question  Would ruling adverse to these defendants unreasonably *23 obstruct and unduly burden interstate commerce? Such appears to be true. See Davis v. Farmers' Co-op Equity Co., 262 U.S. 312, 315 et seq., 43 S.Ct. 556, 67 L.Ed. 996 (1923) (not dissimilar in analogy to the facts here); Michigan Central R. Co. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470 (1929); Denver & R.G.W.R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295 (1932) (also not dissimilar in part in analogy to the present case).
In Zuber v. Pennsylvania R. Co., 82 F. Supp. 670 (N.D. Ga. 1949), the court stated:
"One can conceive of no clearer rejection of the idea that the residence of the plaintiff in the State of suit alone, not supported by any other circumstances of business activity by the defendant except the presence of a traffic agency, will maintain jurisdiction than is presented by the ruling in the Terte case, as construed and confirmed in the International Milling Company case. In view of the fact that the sole business activities in Georgia of both the Rock Island Line and the Pennsylvania Railroad is the maintenance of soliciting freight and passenger agencies, the residence of the plaintiffs in these three cases within the State of Georgia is not sufficient to maintain their respective actions because, under the facts and the law, to permit this would impose an undue and unlawful burden upon interstate commerce." (at pp. 676-677, of 82 F. Supp.)
Contra, as to result, see International Milling Co. v. Columbia Transp. Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396 (1934), where Justice Cardozo distinguishes and limits prior cases.
The first question concerns the validity of service on these two foreign corporations by serving the passenger agent of Penn in New Jersey.
In Hedge v. Pennsylvania Railroad Co., 4 N.J. Misc. 315, 132 A. 492 (Sup. Ct. 1926), the court, in considering the effectiveness of such service on these identical defendants, held:
"An examination of the authorities in the United States Supreme Court, as well as in the courts of such states as have had the matter under consideration, seems to lead to the conclusion that the rule is settled beyond controversy that the agent in this instance was not *24 the agent of the two foreign railroad companies for the purpose of accepting service or process in an action at law * * *." (at p. 317 of 4 N.J. Misc.)
There the defendants were foreign corporations. They did not operate or maintain any trackage in New Jersey. They did not own property or maintain offices or other places of business in this State. They had no employees in the State. They transacted no business in this State except such as may be inferred from the incidental sale of through coupon tickets over their lines by agents of other railroads operating in New Jersey. While the opinion is barren of reference to solicitation of freight, it is likely that the defendants sought freight traffic then as they do now. The word "traffic" is generic of both freight and passenger.
In Philadelphia & Reading Ry. Co. v. McKibbin, supra, the court held that a foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such extent as to warrant the inference that it is present there and even if it is doing business therein, the process will be valid only if served upon some authorized agent. Service on the president of the railway while he was going through New York engaged exclusively on personal matters unconnected with the company's affairs was vacated.
And in Dodd v. Rahway Valley Company, 150 F. Supp. 599 (D.N.J. 1957), the court, in commenting upon the status of the ticket agent for service of process, held, when it quashed the service:
"* * * It has long been settled law, Federal and State, both that such a ticket agent as the above is not a servant or managing or general agent of the connecting carrier, but a servant of the primary carrier, where the ticket is bought, and also that his above activities alone do not constitute `doing business' by the foreign corporation within the state of service * * *." (at p. 600 of 150 F. Supp.)
In Davis v. Farmers' Co-op Equity Co., supra, Justice Brandeis, for the court, held:
*25 "Solicitation of traffic by railroads, in states remote from their lines, is a recognized part of the business of interstate transportation. * * *" (262 U.S., at p. 315, 43 S.Ct., at p. 557, 67 L.Ed. 996)
The second question concerns the service on these defendants pursuant to R.R. 4:4-4(d). The pertinent portion of the rule reads:
"* * * or, if service cannot be made upon any of the foregoing and the corporation is a foreign corporation, then, subject to due process of law, by mailing, registered mail return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office."
The rule is subject explicitly to the requirements of due process of law. Implicit in the latter is the existence of certain contacts between the defendant and the State at the time service is made.
Judge Learned Hand, in the forerunner to International Shoe Corp. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), observed of various cases in this field:
"* * * It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass." Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 142 (1930).
He concluded that one may look from one end of the decisions to the other and find no vade mecum (at p. 142 of 45 F.2d).
The reasoning of that case is relied on in the International Shoe case. It is cited as a basis of the opinion therein. The holding in the International Shoe case  minimum contacts were such that the maintenance of the suit did not offend traditional notions of fair play and substantial justice  now less than two decades old, has proved to be no bridge across the swamp and no ready reference. It has merely added more tufts to the morass.
McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 323 (1957); Union Mutual Life Co. of Iowa v. District Court, 97 Colo. 108, 47 P.2d 401 (Sup. Ct. 1935), and Union Mutual Life Co. of Iowa v. *26 Bailey, 99 Colo. 570, 64 P.2d 1267 (Sup. Ct. 1937), are of a class where the rule is extended because the state had a manifest interest in providing effective means of redress for its residents when their insurers refused to pay claims. And note that in the McGee case the court held that it was sufficient for purposes of due process that the suit was based on a contract which had substantial connection with California. There are other distinguishable class groups in search of Judge Hand's "vade mecum."
In our own State, A & M Trading Corp. v. Pennsylvania R. Co., 13 N.J. 516 (1953), adopts the rule of the International Shoe case. To review the New Jersey and other cases to 1962 would be futile in the face of the exhaustive opinions in Dowd v. Boro Drugs, Inc., 70 N.J. Super. 488 (1961), and Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962), affirmed for the reasons expressed therein in 39 N.J. 32 (1962), same in 74 N.J. Super. 275 (Law Div. 1962). Both Miklos v. Liberty Coach Co., 48 N.J. Super. 591 (App. Div. 1958), and Dowd v. Boro Drugs, Inc., supra, have approved an analysis of the effect of the International Shoe Co. case in 18 Fletcher, Cyclopedia of Private Corporations (1955 rev. Vol.), #8713.1, pp. 419, 420, wherein the author states:
"* * * In determining this question, the court looks not only to the regularity, continuity and extent of the corporate activity within the state (the principal considerations under the older cases), but likewise looks to two other factors of great importance: (1) whether the cause of action asserted resulted from the corporate activity within the state; and (2) the closely related question of a weighing of the conveniences to the parties. This latter consideration is not unlike that found in the doctrine of forum non conveniens.".
See also, "Developments in the Law  State  Court Jurisdiction," 73 Harv. L. Rev. 909 (1960).
Of Davis v. Farmers' Co-operative Equity Co., supra, Judge Hand in the Hutchinson case, supra, stated:
"Nor is it anomalous to make the question of jurisdiction depend upon a practical test. This for example is avowedly the case as to corporations engaged in interstate commerce." (45 F. 2d, at p. 141) *27 The Davis case was decided under the commerce clause, and the court did not consider whether the statute also violated the Fourteenth Amendment. Justice Frankfurter, in his dissent in Baltimore & Ohio R.R. v. Kepner, 314 U.S. 44, 58, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222 (1941), states that International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396 (1933), does not restrict but in fact expressly recognizes the doctrine of the Davis case. And in his dissent in Miles v. Illinois Central Railroad Co., 314 U.S. 602, 62 S.Ct. 177, 86 L.Ed. 970 (1942), he states that the court there does not overrule the doctrine of the Davis case. Earlier, in the International Milling Co. case, Justice Cardozo had written that the Davis decision was confined narrowly within the bounds of its own facts (292 U.S., at p. 517, 54 S.Ct., at pp. 798, 799, 78 L.Ed. 1396).
The Davis case squarely held (262 U.S., at p. 312, 43 S.Ct. 556, 67 L.Ed. 996) that solicitation of traffic by railroads, in states remote from their lines, is part of the business of interstate commerce. Justice Brandeis then described in detail the serious and unreasonable burdens imposed which rendered the statute involved obnoxious to the commerce clause.
Further it should be considered whether the railroads as a class are an exception to the rule of the International Shoe case because they are a captive group as connecting lines in a Congressionally devised pattern. They have been forced by the Interstate Commerce Act, as part of the national pattern in the interest of the nation as a whole and for the convenience of the passengers, inter alia, to sell their portion of through or coupon travel tickets through the initial and selling carrier.
Justice Cardozo in the International Milling case refers to the defendant therein as "not do(ing) business like a railroad company along a changeless route." 292 U.S., at p. 520, 54 S.Ct., at p. 800, 78 L.Ed. 1396.
*28 Chief Justice Stone in the International Shoe case (at p. 319) predicates the result on:
"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. * * *" (326 U.S., at p. 319, 66 S.Ct., at p. 160, 90 L.Ed. 95; emphasis added)
Here these two defendants are not exercising a "privilege." A privilege is voluntarily incurred. Their participation in the sale of tickets is compulsive by law. These defendants never knew this plaintiff or solicited the sale of a ticket to her in any voluntary way. In dealing with her they did what the Congress and its delegated instrumentality, the I.C.C., ordered and directed them to do.
In addition to the rule of the Davis case, we have an earlier and clear holding in Green v. Chicago, Burlington & Quincy Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907), that a railroad which had no tracks within the district (there the Eastern District of Pennsylvania) was not doing business therein in the sense that liability for service was incurred because it hired an office and employed an agent for the merely incidental business of solicitation of freight and passenger traffic. Both of these cases are cited but not overruled in the International Shoe case.
In Harris v. Deere & Co., 223 F.2d 161, 163 (4 Cir. 1955), the court stated that: "It is not for us, however, to overrule or modify decisions of the Supreme Court * * *."
On the general discussion, see also, Greek Tourist Agency v. Hellenic Mediterranean Lines, 199 F. Supp. 6 (D.N.Y. 1961); Long v. Victor Products Corp., 297 F.2d 577 (8 Cir. 1961); Fannin v. Chesapeake & Ohio Rwy. Co., 204 F. Supp. 154 (D.C. Pa. 1962).
In Dodd v. Rahway, supra, the facts are tortured to find Atlantic Coast Line present in New Jersey so as to support service of process (the through dining car was open to customers in New Jersey while the train was in interstate commerce). The court predicates its decision on a plus basis  *29 a mobile restaurant business plus regular solicitation of freight traffic.
The law settled by this case is equally binding on participating interstate carriers to transportation from Anchorage, Alaska, Honolulu, Hawaii, Walla Walla, Washington, San Diego, California, and other distant points in the Union, to Newark, New Jersey, on a round-trip ticket purchased from Pennsylvania Railroad Company in Newark.
The motion of Richmond, Fredericksburg and Potomac Railroad to quash the summons and return of service of summons on the ground of lack of jurisdiction over its person on the dual grounds stated herein, viz., (1) such service unreasonably obstructs and unduly burdens interstate commerce, U.S. Const., Art. 1, § 8, clause 3, and (2) such service is in violation of the Fourteenth Amendment to the Federal Constitution, is granted.
The motion of Atlantic Coast Line Railroad to quash service on the jurisdictional ground that it does no business in this State is granted on the same grounds.