## HANLEY CO., Inc. v. BUFFALO FORGE CO.

### Civil Action No. 7511.

United States District Court
W. D. Pennsylvania.

March 17, 1950.

Smith, Buchanan & Ingersoll, Pittsburgh, Pa., (William H. Eckert, John G. Buchanan, Jr., Pittsburgh, Pa., of counsel), for plaintiff.

Dickie, Robinson & McCamey, Pittsburgh, Pa., (Lambert Turner, Jr., Sanford M. Chilcote, Pittsburgh, Pa., of counsel), for defendant.

FOLLMER, District Judge.

This is a motion by defendant to quash the summons and complaint in this action.

Plaintiff, a Pennsylvania Corporation, having its principal office and places of business in Pennsylvania, brought this action against defendant, a New York Corporation, for breach of warranties in the sale of certain industrial fans purchased of defendant by plaintiff and installed in its plant at Summerville, Pennsylvania. Service was made on the defendant at its place of business, No. 345 Fourth Avenue, Pittsburgh, Pennsylvania, by the United States

Marshal by leaving a true and attested copy of the summons and complaint with H. Lee Moore "Office Manager and person in charge." Defendant has its principal office and place of business at Buffalo, New York.

The deposition of H. Lee Moore developed that he is the lessee of certain offices known as rooms numbered 300, 301, and 302 on the third floor of the Standard Life Building situated at 345 Fourth Avenue, in the City of Pittsburgh, Pennsylvania; that he pays the monthly rental of $115 himself, and that he employs a stenographer and a salesman; that Moore and his principal assistant, the salesman, are both graduate engineers; that Moore devotes his entire time to handling Buffalo Forge Company products, has an exclusive territory covering Western Pennsylvania, Eastern Ohio, all of West Virginia, and a small portion of Maryland, and receives commissions on all sales made in this territory on the line of equipment which he handles; that the name of Buffalo Forge Company and that of its wholly owned subsidiary, Buffalo Pumps, Inc., appears on the door of his office, where service was made, with the words "H. Lee Moore, Representative" appearing thereunder; that Buffalo Forge Company is listed as such in the Pittsburgh Telephone Directory under the same address, a practice which has been followed during the entire period of Moore's connection with the company and which has continued without interruption since 1913; that Buffalo Forge Company furnishes Moore with catalogues and stationery, the latter of which display prominently the name and address of Buffalo Forge Company, with Moore's name and the local address appearing in a subordinate position.

Sales are made regularly and consistently in Western Pennsylvania, and in 1948 Moore's territory accounted for a gross business of over half a million dollars. Moore's primary function is to sell and build good will. He either takes the order and forwards it to the home office of defendant at Buffalo, or the customer sends the order direct to Buffalo, from whence the shipment and invoice are forwarded. Payments are made direct to Buffalo and never to Moore. The Pittsburgh office serves as a "Branch Engineering Office" of defendant and at one time it and its counterparts throughout the country were so described in the company's catalogues. Moore considers it a part of his function to handle complaints and inquiries, which incidentally he is apparently qualified to do by reason of his engineering training and experiences, although he ascribes this merely to his desire to build up good will for the company, without which his job would be in jeopardy.

Moore stated, "I never did class myself as being an order taker." When complaints are received, he stated "I naturally drop anything I am doing and go and try to straighten him out, * * *." When a complaint is made to the Buffalo Office it is generally passed on to Moore and he then follows the same procedure. After checking on complaints he sends reports to Buffalo on intra-company stationery. In general, Moore makes suggestions to customers designed to solve difficulties which arise out of the use of defendant's products, and aids in cleaning up and preventing misunderstandings and difficulties in connection with the company's business whenever he has the opportunity.

The plaintiff argues that service on defendant was proper; that the cause of action arose in the Western District of Pennsylvania; that in this district defendant has engaged in a continuous, systematic and substantial business, and that the activities carried on here on its behalf go far beyond "mere solicitation." Defendant on the other hand contends that it was not doing business in Pennsylvania in 1948 and therefore the service is void.

The Supreme Court has succinctly stated the rule herein involved as follows: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized

agent." [1] To apply this rule is not as simple as to state it. Later the Supreme Court stated, "The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted. * * *" [2]

In 1907, in Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530, 533, 27 S.Ct. 595, 596, 51 L.Ed. 916, the Court pronounced the "mere solicitation" doctrine as follows: "The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it. * *"

In 1914, in International Harvester Company of America v. Commonwealth of Kentucky, 234 U.S. 579, 587, 34 S.Ct. 944, 946, 58 L.Ed. 1479, the Court, while indicating that it had no desire to depart from its decision in the Green case, supra, held, "In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky. There was authority to receive payment in money, check, or draft, and to take notes payable at banks in Kentucky." Thus came into being the so-called "solicitation-plus" doctrine.

Finally in 1945, the Supreme Court in International Shoe Co. v. State of Washington et al., 326 U.S. 310, at page 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057, reviewed at length the whole subject of doing business within a state for jurisdictional purposes, and defined the "presence theory" as follows: "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. * * * But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * *

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, * * * it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. * * *

---

1. Philadelphia & Reading Railway Company v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

2. People's Tobacco Company, Limited v. American Tobacco Company, 246 U.S. 79, 86, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537.

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. * * *"

Furthermore, in the same case, 326 U.S. at page 319, 66 S.Ct. at page 159, 90 L.Ed. 95, 161 A.L.R. 1057, the Court said, "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. * * *"

Applying the above principles to the instant case, I am very definitely of the opinion that defendant is doing business in the State of Pennsylvania in such manner as to make it subject to service of process. Motion to quash is denied.