**NERIS CARBON AND OIL CORPORA-TION, Plaintiff,**

v.

**TRANSCONTINENTAL OIL COMPANY, Defendant.**

United States District Court

S. D. New York.

Dec. 2, 1957.

Thaddeus G. Benton, New York City, for plaintiff.

William A. Smith, Staten Island, for defendant.

FREDERICK van PELT BRYAN, District Judge.

Defendant, appearing specially, has moved to quash the service of the summons and dismiss the action for want of jurisdiction of the person upon the grounds that it was not subject to service of process within the Southern District of New York and that service was made upon a person who was not at the time of service authorized to receive service on its behalf.

The complaint seeks damages in the sum of $73,740 for breach of written contracts, made in New York, whereby defendant agreed to deliver two cargoes of bunker C oil to plaintiff in Venezuela. It is alleged that defendant failed to deliver the oil at the time and place fixed in the contracts though plaintiff had delivered to defendant in New York, and defendant had accepted there, plaintiff's letter of credit in the sum of $199,200 on account of the purchase price. The complaint also sets forth a third cause of action alleging that defendant had no reasonable cause to believe that it could acquire the oil it agreed to deliver to the plaintiff and that defendant's representations that it could and would deliver such oil were untrue and a fraud upon the plaintiff to the plaintiff's additional substantial damage.

Plaintiff has taken the depositions of various persons on the facts involved on this motion and relies largely on such depositions to establish that service was properly made. However, plaintiff was unable to take the deposition of defendant's president, Buffum, since Buffum refused to appear for examination here.

Defendant, incorporated in Illinois, is engaged in the production and marketing of oil. Its principal place of business is in Bartlesville, Oklahoma. It is not licensed to do business in New York. It pays no taxes in this State. Its name does not appear in telephone books or directories. It does not have its name on any office door, nor is it listed in any building directory.

The summons and complaint were served on May 14, 1957 upon one Ben Dundee at his home in Larchmont, N. Y. Dundee had, on March 14, 1957, been elected "Executive Vice President" of the defendant "with full signatory powers to contract sale of oil and financing". Dundee was a consulting engineer who specialized in the marketing of natural resource products. He had been introduced to defendant's president, Buffum, by a Mrs. Howard who had previously sought to sell or market some of defendant's products in the New York area.

In late February or early March 1957 Dundee, together with two partners of Dormand & Company, with offices at 509 Fifth Avenue, New York, conferred with Buffum in New York concerning Dundee's representation of defendant in the solicitation of oil business here. The Dormand partners were known to Buffum, and it may be fairly inferred that arrangements were then confirmed for Dundee to occupy an office with Dormand & Company for the purpose of carrying on this business. Shortly prior to Dundee's election as executive vice president of the defendant on March 14 he moved into an office at Dormand & Company, and for some two months was engaged in solicitation of business and negotiations on behalf of the defendant for the sale of oil in New York from that office.

In his capacity as "Executive Vice President with full signatory powers," Dundee solicited orders for oil on defendant's behalf from a number of New York brokers and engaged in other business transactions in furtherance of defendant's interests. One of the brokers with whom he was in contact put him in touch with plaintiff's attorney Benton, with whom he negotiated the contracts in suit in New York and signed the offers and confirmed the acceptances of such contracts as defendant's executive vice president here. The letter of credit delivered by plaintiff, pursuant to one of these contracts, was delivered to Dundee

in New York and accepted by him as defendant's executive vice president. Another letter of credit under these contracts was also tendered to him here.

The negotiations which Dundee conducted involved substantial sums, and, indeed, the contracts which he signed with plaintiff involved some $400,000. Dundee was in almost daily telephone communication with Buffum in the southwest. He carried on regular correspondence from his New York office on defendant's behalf with respect to defendant's business. It is plain that he was conducting business here on defendant's behalf in his capacity as its executive vice president from a New York office with defendant's full knowledge and approval.

On May 9, 1957 Buffum wrote to Dundee at the New York office advising him that there were difficulties in obtaining the bunker oil which had been contracted for delivery to plaintiff, and indicating that it was unlikely that timely delivery could be made. In the course of this letter Buffum also said:

"I do not know what repercussions will be attempted by Neris [the plaintiff] and/or Benton [its attorney]. However, in order to prevent your becoming involved in any litigation or place Benton in position of serving you as an officer of this company with a service we have cancelled your appointment as Executive Vice President until this matter is clarified. So that if any attempt is made to involve you that you may so state and refuse service. If that is what they have threatened and might attempt purely on a nuisance basis as they would not stand a ghost of a show in court but might put is [sic] to a lot of trouble and expense if we would have to come to New York to fight them."

Dundee was ill at the time this letter was received at his office but was informed of its contents. When plaintiff's attorney, Benton, served the summons and complaint upon Dundee in Larchmont on May 14, pursuant to an order of the clerk of this court permitting service by him in lieu of service by the United States Marshal, Dundee informed Benton that he was no longer an officer of the company and that the papers were served "on the wrong party." He also advised Benton the next day that he had "tossed the papers away" for that reason. No attempt had been made to inform plaintiff or its attorney of the removal of Dundee as an officer of the company prior to the time when service was made.

Plaintiff sent copies of the summons and complaint to defendant by registered mail at its main office in Bartlesville, Oklahoma.

On May 15, 1957, the day after service was made, the papers served were forwarded by Dundee to the defendant's president in Oklahoma with the following accompanying letter:

"Dear Frank:

"Last night Benton appeared at my home and deposited these papers despite the fact that I informed him that I was no longer an officer of the co.

"I do not intend appearing and am sending these along so that your attorney may study them.

"Also please advise as to the exact date when I was removed as an officer.

"Best
"Ben"

To this Buffum replied by letter of May 17, 1957 on defendant's letterhead:

"Dear Ben:

"Your letter of May 15th received.

"In response will state that you were formally removed from office as an officer of this company at a special board of directors meeting held at 10:00 a. m. on May 9th, 1957.

"You were notified in writing the same day, receipt of which you have acknowledged.

"The attempted service therefore is not valid.

"Very truly yours,
"Frank G. Buffum
"President"

On May 15 or 16 Dundee hastily withdrew from his office connection with Dormand & Co. and thereafter established offices at 136 Church Street, New York. After the service of the summons and complaint upon him, and after he had been advised of his purported removal as executive vice president, Dundee continued to act for the defendant upon matters involving the sale of oil which were outstanding.

■ The formal removal of Dundee as defendant's executive vice president was merely a device to avoid service upon the corporation and nothing more. It is plain that defendant corporation, for a period of some two months prior to the service of the summons and complaint here, was engaged in continuous and systematic activities in New York City through its executive vice president who had an office here. These activities gave rise to the alleged liabilities sued on here. Indeed, the actual contracts in suit were executed in New York by Dundee as executive vice president of the defendant and plaintiff's steps toward performance were also approved by him in New York in like capacity. The papers submitted by defendant on this motion, containing, as they do, numerous statements which I will charitably refer to as factual inaccuracies, tend to confirm these facts.

The question presented here is whether defendant, under these circumstances, can escape service in this forum by the transparent and artificial device of formally removing Dundee as its executive vice president on the eve of suit "until this matter [the very matter in suit] is clarified". In my view it plainly can not.

■ Defendant has failed to substantiate its claim that it was not doing business in this district within the meaning of 28 U.S.C. § 1391(c) so as to make it subject to the process of this court. Its activities in New York plainly made it present in this forum for purposes of service under the standards laid down in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. The defendant's activities in New York were systematic and continuous for some two months prior to service and resulted in a large volume of business. The obligations which are sued on here arose out of these very activities. There is no question but that this defendant had "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice" to permit the enforcement in this forum of the obligations which defendant incurred here. International Shoe Co. v. State of Washington, supra, 326 U.S. at page 320, 66 S.Ct. 154; French v. Gibbs Corp., 2 Cir., 189 F.2d 787; Hanley Co. v. Buffalo Forge Co., D.C.W.D.Pa., 89 F.Supp. 246; Lehn & Fink Products Corp. v. Milner Products Co., D.C.S.D.N.Y., 117 F.Supp. 320. See, also, Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184; Pickthall v. Anaconda Copper Mining Co., D.C.S.D.N.Y., 73 F.Supp. 694; Sullivan v. Kilgore Mfg. Co., D.C. E.D.N.Y., 100 F.Supp. 983.

As Judge Learned Hand said in French v. Gibbs Corp., supra, (p. 789):

" * * * continuous activities, be they as little as one will, satisfy the necessity of that physical 'presence' on which jurisdiction depends in a jurisprudence, territorially limited. Jurisdiction *in personam* in such a jurisprudence presupposes the power of the court to lay its hand upon the defendant, since otherwise it cannot compel his obedience; and it is not a solecism, but an act of grace, if it substitutes notice for a *capias*. For that reason it is also permissible to substitute for a *capias* notice served upon anyone who is conducting the local activities of a corporation outside the state which chartered it; and the only remaining question is whether to force it to trial in the forum of those activities is too unfair to be constitutionally defensible. * * * "

Judge Hand went on to say that among the facts which are relevant in determining whether it is fair and reasonable to

require a foreign corporation to defend a suit are:

"*  *  * whether the liability arose out of events occurring within the state of the forum. Still more relevant and important will be whether the service was made within a short time after the corporation had discontinued its principal activities. Certainly when these two circumstances conspire, it is proper to demand of the defendant some showing why during the interval the situation had so changed that, although it was fair to force it to a trial before it reduced its activities, it had become unfair when the writ was served.  *  *  *"

In the case at bar not only has defendant failed to show that it would be unfair to it to force it to trial here, but it affirmatively appears that to permit to escape service and avoid a trial would be manifestly unfair to the plaintiff. The removal of its executive vice president "until the matter is clarified" indicates merely a temporary suspension of some of his authority. The defendant did not attempt to terminate its activities in New York and indeed such activities were continued through the very person whom it had purported to remove as its officer. The removal occurred only when defendant learned that there was likelihood of a dispute with the plaintiff which would lead to litigation and was on the very eve of suit. Such a transparent and artificial device is not a determining factor on the question of whether defendant was engaged in such activities within this district as made it physically present here for purposes of service.

■ Defendant's claim that it was not properly served because Dundee had no authority to receive service on its behalf is equally without merit. Under Rule 4(d) (3) F.R.C.P., 28 U.S.C., a foreign corporation may be served by delivering a copy of the summons and complaint to an officer or a managing agent. Even if it should be held that the removal of Dundee as defendant's executive vice president prevented service upon him thereafter as an officer of the corporation, he nevertheless continued to act as defendant's managing agent in New York. For he continued to carry on for the defendant the activities in which he had been previously engaged. Rule 4(d) (7) F.R.C.P. directs the court to local law to determine whether a person is the managing agent of a foreign corporation. Since Dundee continued to act on defendant's behalf and was in charge of its local business

"*  *  * [he] was the 'managing agent,' as the statute uses the word; for we understand the New York courts to hold that, whatever activities make the corporation 'present,' the agent in charge of those activities is the 'managing agent' pro hac vice.  *  *  *"

Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33, 37; see, also, French v. Gibbs Corp., supra, 189 F.2d at page 789; McClendon v. Curtis Bay Towing Co., D.C. S.D.N.Y., 130 F.Supp. 455; Allegue v. Gulf & South American S. S. Co., Inc., D.C.S.D.N.Y., 103 F.Supp. 34; Tuchband v. Chicago & A. R. Co., 115 N.Y. 437, 22 N.E. 360; Benware v. Acme Chemical Co., 284 App.Div. 760, 135 N.Y.S.2d 207; New York Civil Practice Act, §§ 229(3), 228(8).

The defendant was properly served in this forum. Its motion to quash service and to dismiss the action for want of jurisdiction of the person is in all respects denied. Submit order.